## WILSON vs. NOONAN.

LIBEL: (1.) *Liability of defendant for article written by him and trans-lated by another.* (2.) Res adjudicata, *on second trial.* (3.) *Complaint for libel; charge of publication to persons who understood, etc.* (4.) *Instructions: Distinction between express and implied malice.*

EVIDENCE—LIBEL: (4-7.) *What evidence admissible as to plaintiff's acts or reputation.*

1. One who writes an article in English and employs another person as his agent to translate it into German and publish it, will be liable if the German article so published is libelous, although the translation is inaccurate.
2. This court having decided on a former appeal in this cause, that the words sued upon *prima facie* imputed to plaintiff corrupt conduct in his official character, and no evidence tending to a contrary conclusion having been introduced on the second trial, it was not error to with-draw that question from the jury.
3. The complaint alleged that the libelous words were published in a certain newspaper, in the German language, and that a large proportion of the people of this state are Germans who still speak and read the German language, and among whom said paper has a large circulation, etc. *Held,* that these allegations must be construed liberally with a view to substantial justice (sec. 21, ch. 125, R. S.), and that they sufficiently charge a publication of the article to persons who under-stood its contents.
4. An instruction asked by defendant, " that malice is the essence and gist of the action for libel, and the jury should consider all facts in the case showing that said publication was made with good motives and without any malice, in mitigation of damages," does not discriminate properly between the malice implied by law from the doing of an unlawful act, and the malignant intention to injure and defame, which constitutes " express malice;" and there was no error in refusing it.

5. In a suit for libel, evidence of particular dishonest and corrupt acts of the plaintiff, entirely disconnected with the offense charged in the alleged libel, is inadmissible.

6. It is the settled law of this state, that, in an action for slander or libel, evidence is admissible under a general denial, to show plaintiff's bad reputation in reference to the particular fault charged.

7. The alleged libel in this case having charged plaintiff with corrupt conduct as a state senator, defendant might show plaintiff's bad reputation for honesty and integrity in that office.

8. LYON, J., is of the opinion that defendant in such an action should not be allowed to show plaintiff's bad reputation in respect to *any other* vice or fault than that charged in the libel. But it was not necessary to decide that question here.

APPEAL from the Circuit Court for *Milwaukee* County.

Action for libel. The complaint, after certain prefatory matter, avers that on the 13th of March, 1866, during the session of the legislature of this state for that year, at the city and county of Milwaukee, defendant did maliciously publish and cause to be published in the German language, in a newspaper printed and published in said city of Milwaukee, called the " Banner and Volksfreund," of and concerning the plaintiff, and of and concerning his official action as a member of the state senate, certain false, scandalous and defamatory matter. The alleged libelous article is then set out in German, and an English translation given, which is alleged to be correct. The substance of the article as thus translated will be found in the opinion of Mr. Justice COLE upon the former appeal in this cause (23 Wis. 106). It is then averred that a large proportion of the people of this state are Germans, who still speak and read the German language, and among whom the said newspaper has an extensive circulation, and that this is particularly true in respect to the constituents of the plaintiff in said senatorial district; and an allegation in the usual form is added as to damages. -

The answer contained, first, a general denial; secondly, an averment of circumstances attending the publication of the article in question, and an aver-

ment that the same "was a fair and warrantable criticism of the official conduct of the plaintiff as a representative of said senate district, and not imputing or intending to impute any crime of bribery or fraud on the part of plaintiff as a member of said senate." Thirdly, "for a further defense," the answer alleges, in substance, that during a session of the legislature in 1863, a bill was introduced to incorporate the Wisconsin Copper-mining and Smelting Company; that plaintiff was at that time a member of the senate, and that he corruptly and unlawfully agreed with parties interested in the passage of said bill, that he would attend to the passage thereof upon condition that he should receive a certificate of the capital stock of said company of the value of $50; and that plaintiff did, in fact, in pursuance of such corrupt agreement, receive such stock; that these facts became known to defendant prior to January, 1866, "whereby the personal and official reputation and character of the plaintiff became and was at the time last aforesaid greatly injured, and was of no value; and that all the facts hereinbefore stated were well known to the people of said plaintiff's senate district, and to the people of said state."

The court instructed the jury, at defendant's request: 1. That in order to find a verdict for the plaintiff, they must find that defendant published, or caused to be published, an article in the German language, in the " Banner and Volksfreund," of the same meaning with the English translation set out in the complaint. 2. That the action was merely for the *publication* of the alleged libel, and that the question of its *composition* was wholly immaterial, except so far as it might throw light upon the question whether defendant procured its publication. 3. That the libel, if any, appeared to have been composed in English, and it was incumbent on the plaintiff to prove that whatever was published in the " Banner and Volksfreund " was published by defendant's direction or procurement.

The court further instructed the jury : 1. That the answer contained only one valid defense, viz., the general denial. 2. That the supreme court had already decided in this case that the article published was libelous on its face. 3. That if A. writes an article for publication in a paper in a different language from that in which the article is written, and takes it to the publisher or editor of such paper, to be by him translated for A., and to be published, then A. makes such publisher his agent in that matter, and is responsible for such substantive translation and publication ; and that if defendant took the article in question to the publisher of the " Banner and Volksfreund," to be translated and published, and after such publication admitted and assumed the responsibility for such publication, then plaintiff had made out the affirmative of this case ; and that in such case it was immaterial whether such original article was correctly translated or not.

The following instructions (in substance) were asked in defendant's behalf by Mr. Walker, one of his attorneys, and were denied : 2. That if defendant furnished the " Banner and Volksfreund " an article in the English language, for publication in German, but the article published in German, when re-translated into English, is different in substance or material language from the article so furnished, then plaintiff could not recover. 3. That they must find for defendant unless he authorized the publication of an article in the German language, as alleged in the complaint, which, when translated into English, was, in substance and material language, of the same meaning as the English of the article furnished by the defendant. 4. That if defendant, at the time he furnished the article in English to the " Banner and Volksfreund," and at the time the article was published in German, could neither read, write nor speak, nor understand, the German language, then he was

not responsible for a publication differing in substance or material language, when translated into English, from the article so furnished by him, unless he had seen and approved such English translation before the publication in German. The 5th and 6th of the instructions thus asked and refused, merely applied the principles above stated to certain specific differences alleged to exist between defendant's original article and a correct English translation of the German article actually published.

The following instructions (in substance) were asked in defendant's behalf by Mr. Murphey, one of his attorneys, and were refused: 3. That if defendant wrote in English an article for publication in said newspaper, and for the purpose of having it translated into German, he was not responsible for any errors of translation. 4. That if defendant, when, in conversations subsequent to said publication, he stated that he had written and published the article, could not write, speak or read the German language, and had not seen or compared the re-translation of said German publication with the original English article, then his said statement could not be received as evidence of the publication of the libel set forth in the complaint. 5. That it was for the jury to determine from the evidence, whether defendant in said conversation alluded to the article in English, or to the one in German, published in the "Banner." 6. That if defendant knew the meaning and contents of the article as published in German, and then assumed the authorship and publication thereof, he would be bound by it; otherwise, not. 7. That the jury were not bound by the innuendoes of the complaint, but were the sole judges as to whether the words used were intended to impute to the plaintiff the crime of bribery. 8. That if the article did not impute the crime of bribery or other crime to the plaintiff, but was intended only as a criticism upon his official

action, they must find for defendant. 9. [Substantially the same as the former.] 11. That malice is the essence and gist of an action of libel, and the jury should consider all facts in the case, if any, showing that said publication was made with good motives and without malice, in mitigation of damages. 12. That if the jury believe from the evidence that plaintiff accepted $50 of stock in the said Copper-mining and Smelting Company as a consideration for his services in passing an act through the legislature, such act was unbecoming a member of the legislature, and might be considered in mitigation of damages. 13. That if the publication was variant from what defendant wrote to be published, in the respects testified to by defendant, they must find for the defendant.

Verdict for the plaintiff, for $2,000; new trial denied; and defendant appealed from a judgment on the verdict.

*Palmer, Hooker & Pitkin,* for appellant, argued that the complaint did not contain any proper averment that the alleged libel was published to those who understood it, or that it was read or understood by any one. 1 Chitty's Pl. 406; 1 Starkie, 361; *Warmouth v. Cramer,* 3 Wend. 394. 2. It being the rule that if a libel is published in a foreign language, it must be correctly set out in the complaint in the language in which it is published, and that a correct translation must also be set out (1 Starkie, 368; 2 id. 50; *Warmouth v. Cramer,* 3 Wend. 394; *Cook v. Cox,* 3 Maule & Sel. 113); it must also be true that where the alleged libel is written in English, and before publication is translated into a foreign language by a person other than the writer—especially where such other language is one which the writer does not understand—it must be shown that the publication was a correct translation of the original, before such publication and its re-translation into English is competent evidence. Defendant is only responsible for what he wrote and

published. *Harding v. Greening*, 8 Taunt. 42; *Same Case*, 1 Moore, 477; 4 Eng. Com. Law, 32. 3. The complaint is, that defendant *caused to be published in the German language* the alleged libelous matter. Plaintiff was bound to prove this charge as alleged. 1 Chitty's Pl. 405; *Bell v. Byron*, 13 East, 554; PARKE, J., in *McPherson v. Daniels*, 2 Barn. & Cress. 263 (21 E. C. L. 74); *Cook v. Cox*, 3 Maule & Sel. 113; *Miller v. Miller*, 8 Johns. 75; *Fox v. Vanderbeck*, 5 Cow. 513, 515; *Olmsted v. Miller*, 1 Wend. 506; 2 Phillips' Ev. 236, and cases there cited. But the charge was not sustained by plaintiff's own evidence; it not being shown that the article published was a correct translation of what defendant had written. 4. The evidence offered by defendant as to the general character and reputation of the plaintiff as a representative in the legislature, was improperly excluded. 2 Starkie on Slander (ed. of 1843), 77, and notes and authorities; *Hamer v. McFarlin*, 4 Denio, 509; *Douglass v. Tousey*, 2 Wend. 352. 5. It was error to rule out evidence offered by defendant of the specific misconduct of the plaintiff as a senator, alleged in the answer. The evidence was admissible in mitigation of damages. *Bush v. Prosser*, 1 Kern. 347; *Bisbey v. Shaw*, 2 id. 67; *Kennedy v. Holborn*, 16 Wis. 457.

*A. C. Fraser*, for respondent, argued, among other things, that in pleading, what is necessarily implied need not be alleged (*Allen v. Watson*, 16 Johns. 205, 210; *Frets v. Frets*, 1 Cow. 335, 340; *Chappell v. Bissell*, 10 How. Pr. R. 274, 275; *Bank of Lowville v. Edwards*, 11 id. 216, 218; *Farron v. Sherwood*, 17 N. Y. 227, 230; *Keteltas v. Myers*, 19 id. 231, 233; Steph. Pl. 354 et seq.), and the allegation that the paper in which the libel was published had an extensive circulation among Germans who still speak and read the German language, necessarily implies that those who read the paper understood the language in which the article was published. It is true that the complaint must

show a publication of the libel; but any words which denote a publication is sufficient. 1 Chitty's Pl. (13 ed.) 405. Libelous words published in the German language in a German state or county, will sustain an action, without an allegation that they were under-stood. Whether the language was understood is a question of publication. Townshend on Libel and Slander, sec. 97; *Bechtel v. Shalter*, Wright (O.) 107; 1 Saund. 228, n. 1. 2. Where the answer sets up facts in mitigation of damages, it must show that defend-ant, at the time he made the charge, had *knowledge* of these facts; and an averment of *information from others* is not sufficient, unless accompanied by a further averment that such averment was true. *Dolevin v. Wilder*, 34 How. Pr. R. 488, 492; *Haskin v. Lumsden*, 10 Wis. 359, 364; *Williams v. Miner*, 18 Conn. 474, 475. And it must be expressly averred that such facts induced a belief in the truth of the charge at the time it was made; or such facts must naturally carry with them a reasonable presumption that defendant believed the charge to be true at that time. *Dolevin v. Wilder*, and *Haskin v. Lumsden, supra*; *Beardsley v. Bridgman*, 17 Iowa, 293, 294; *Fisher v. Patterson*, 14 Ohio, 418, 425. 3. Evidence of particular acts of misconduct or crime is not admissible in mitigation of damages, either to disprove malice or to impeach the reputation of the plaintiff. It is only character in its most general sense, that is, general reputation for integrity and moral worth, that may be inquired into in actions of this character; or, at most, only evidence of general reputation in respect to the par-ticular misconduct or crime charged. *Lamos v. Snell*, 6 N. H. 413; *Burke v. Miller*, 6 Blackf. 155; *Matthews v. Davis*, 4 Bibb, 173; *Steinman v. McWilliams*, 6 Barr, 170, 175; *Swift v. Dickerman*, 31 Conn. 285, 293; *Park-hurst v. Ketchum*, 6 Allen, 406, 407; *Leonard v. Allen*, 11 Cush. 241, 245; *B—— v. I——*, 22 Wis. 372, 373; *Hager v. Tibbits*, 2 Abb. Pr. R. (N. S.) 97, 102,

4. Defendant was liable for the article as published in German, even if the translation was incorrect. A principal is liable for damages sustained by third persons through the negligence or unskillfulness of his agent, in the course of his employment, although the principal did not authorize or justify, or participate in, or even know of, such misconduct; or even if he forbade the acts. Story on Agency, § 452; Dunlap's Paley, 294; *Stickney v. Munroe*, 44 Me. 204; *Southwick v. Estes*, 7 Cush. 385; *Weed v. Panama R. R. Co.*, 17 N. Y. 362, 367. Upon these principles the proprietor of a newspaper is responsible for whatever appears in his columns; even though the publication was made in his absence, and without his knowledge, or even contrary to his directions. *Huff v. Bennett*, 4 Sandf. 120; *Dunn v. Hall*, 1 Carter (Ind.) 344; *Addres v. Wells*, 7 Johns. 260; *Martin v. Van Schaick*, 4 Page, 479; *Curtis v. Mussey*, 6 Gray, 261. This liability of a principal extends not only to the misfeasance, etc., of the agent immediately employed by himself, but also to that of others employed by that agent. It reaches through all the stages of the work or service. Story on Agency, § 454; *Reeves v. State Bank*, 8 Ohio St. 476. The defendant made the office of the "Banner & Volksfreund" his agent in the translation and publication of his article, and is therefore liable. The court, however, did not go so far, but directed the jury to hold him liable only in case they further found that after the publication he admitted and assumed the responsibility of it.

Lyon, J. This is an action to recover damages for an alleged libel. The contents of the publication complained of are stated sufficiently in the opinion of Mr. Justice Cole, in 23 Wis. 105, when the case was in this court on an appeal from an order overruling a demurrer to the complaint. It was there held that such publication is *prima facie* libelous, in that it

charges the plaintiff with having acted corruptly in his capacity as a state senator, and that it is not merely a libel upon him as a private individual, but is a libel upon him in his public and official capacity as such senator.

The answer of the defendant contains a general denial, and also a statement of certain alleged facts, which, it is claimed, are mitigating circumstances. The circuit judge held, however, that the answer contained no legal defense except the general denial.

The action was tried, and the plaintiff had a verdict and judgment; from which judgment an appeal has been taken to this court by the defendant.

I. The evidence on the trial tended to show that the defendant sent an article written by him in English, to Mr. Shoeffler, the proprietor and publisher of the "*Banner and Volksfreund,*" a newspaper then published in Milwaukee, in the German language, to be translated into German and published in that paper. Mr. Shoeffler had the article translated by a person whom he kept in his employ for such purposes, and published the translation thereof in his paper; which is the publication complained of. The published article is set out in the complaint in German, and also a translation thereof in English; and the evidence shows that there are variances, and perhaps material variances, between such English translation contained in the complaint and the original article written by the defendant. The testimony also tends to show that the libelous article so published in the German language is not a correct translation of the original.

It is quite apparent that if such variance is material—if the scope and character of the article were substantially changed by the translation—the defendant ought not to be held liable for its publication, unless he is responsible for such translation, or in some other way for the publication of the article in its changed form.

The judge charged the jury, in substance, that if the defendant wrote an article for publication in the "*Banner and Volksfreund*," and gave it to the publisher of that paper, to be by him translated into German and so published, the defendant thereby made such publisher his agent in that behalf, and is responsible for the translation and publication thereof, although such translation might be materially inaccurate. We find no error in this instruction. We see no valid reason why the maxim *respondeat superior* should not be applied here. That an agent may be employed to translate written productions from one language to another, and to publish the same as translated, seems too clear for argument; and if this may be done, on what theory can we say that the legal incidents which attach to the relation of principal and agent in other cases, do not attach in this case? The doctrine that the principal is liable to third persons for all damages sustained by them by the negligence or unskillfulness of his agent in the course of his employment, is elementary and of universal application.

Judge STORY, in his Commentaries on the Law of Agency, states the rule to be, that the principal is liable in a civil action "for the frauds, deceits, concealments, misrepresentations, torts, negligences, and other malfeasances or misfeasances, or omissions of duty, of his agent, in the course of his employment, although the principal did not authorize, or justify, or participate in, or indeed know of such misconduct, or even if he forbade the acts, or disapproved of them." Sec. 452. And he also asserts that such liability "extends not only to the injuries and wrongs of the agent who is immediately employed by the plaintiff in the particular business, but also to the injuries and wrongs done by others, who are employed by that agent under him, or with whom he contracts for the performance of the business; for the liability reaches through all the stages of the service." Section 454.

We think that the testimony tended to prove a state of facts which, if proved, renders the defendant liable for the publication complained of, although the same may be materially different from the original article prepared by him.

This case seems to be analogous to that of the proprietor of a newspaper, and such proprietor has been held responsible for whatever appears in the columns of his paper, although the publication was made in his absence and without his knowledge, by an agent to whom he had given express instructions to publish nothing exceptionable, personal or abusive, which might be brought in by the author of the libel. Townshend on Slander and Libel, sections 122, 123 and 124, and cases cited in the notes thereto.

If the ruling of the court in the case of *Harding v. Greening*, 8 Taunton 41 (4 Eng. C. L. 13), cited by counsel for the defendant to sustain the opposite doctrine, is good law, then we think that it is not in point.

II. All of the instructions asked by Mr. Walker which were refused by the court, and the third, fourth, fifth, sixth and thirteenth instructions asked for by Mr. Murphey, are predicated on the hypothesis that if there was any material variance between the original article and the published article as correctly re-translated into English, the plaintiff could not recover. That hypothesis being erroneous, the instructions founded upon it were properly refused.

III. By the seventh, eighth and ninth instructions asked for by Mr. Murphey, it was proposed to submit to the jury the question as to whether the words used in the publication imputed a charge against the plaintiff of bribery or corrupt conduct in office. It has been stated already that when the case was here before, this court held that the words, *prima facie*, did impute such corrupt conduct to him, and there is no evidence tending to show the contrary. The instructions were therefore properly refused.

Wis. xxvii—77

IV. The twelfth of Mr. Murphey's instructions is unsupported by the testimony. The court practically excluded all testimony under the last portion of the answer, relative to .the mining stock. I think this proposed testimony was correctly excluded. It was not competent for the defendant to show particular acts of dishonesty and corruption, entirely disconnected with the offenses charged in the alleged libel. I think this is the settled law of this country.

V. I will here notice another objection, which was made by the defendant at the commencement of the trial, which perhaps should have been considered before. Such objection was, that there is no sufficient averment in the complaint that the alleged libel was understood by any person whatever. The averments of the complaint on this subject are, that it was published in the "*Banner and Volksfreund,*" in the German language; that a large proportion of the people of this state are Germans, who still speak and read the German language, and among whom such paper has a large circulation; and that this is particularly true in respect to the constituents of the plaintiff in his senatorial district.

We are to construe these allegations of the complaint liberally with a view to substantial justice between the parties. R. S. ch. 125, sec. 21. And by that rule of construction, I find no difficulty in determining that the complaint sufficiently charges a publication of the article complained of, to persons who understood its contents.

VI. The *eleventh* of Mr. Murphey's instructions which the court refused to give, is as follows: "Malice is the essence and gist of an action of libel, and you should consider any and all facts in the case, if any, showing that said publication was made with good motives and without malice, in mitigation of damages." It is doubtless correct to say that the absence of what some of the books term *express* malice in the

mind of the defendant may go in mitigation of damages. It is also true that it conclusively appears in this action by the pleadings, that if the defendant published this libel at all, he did so maliciously; for the law infers malice from the doing of a wrongful act without lawful justification or excuse. This is sometimes denominated *malice in law*, or *implied* malice. The instruction seems to assume that there might be an entire absence of malice in the act of publication, which is impossible under the pleadings as they stand. The fault in the instruction seems to be in not making the distinction between the malice which the law implies from the wrongful and unlawful publication, and that which has its foundation in a depraved, wicked or malignant intention to injure and defame. We can hardly say, then, that it was error to refuse the instruction. But had it been framed so as to recognize this distinction, it doubtless should have been given.

VII. Many exceptions were taken during the trial to the rulings of the court upon objections to the admission of testimony. Some of these, perhaps the most of them, are disposed of by the decisions of the various points already discussed. There is but one of these rulings that we deem necessary to refer to particularly.

The following question was propounded to Joseph Philips, a witness called by the defendant, and who had testified that he was a member of the legislature with the plaintiff at its session in 1866, that being the session referred to in the alleged libelous publication: "What was the official character and reputation of the plaintiff, as a representative, at the time he was in the legislature?" The question was objected to by the plaintiff, and the court sustained the objection, and held that any inquiry into the plaintiff's official reputation was improper. There is room for the argument that the question was too broad, and that if

testimony of this character is admissible at all, the inquiry should have been restricted to his reputation for official integrity and honesty. But this was evidently the scope and meaning of the question. It seems so to have been understood by the counsel for the plaintiff, who did not object thereto because it was too general, but, as I infer, on the ground that no testimony of official reputation was admissible; and the court, as above stated, held expressly that *any* inquiry on the subject was improper.

We are to consider this subject, therefore, as though the question had been propounded to the witness in the restricted form above suggested.

The cases are numerous which hold that evidence of the plaintiff's bad character in relation to the particular fault charged, is admissible, and that such evidence is admissible under the general denial. Whatever conflict of authority there may be on the subject, such is the settled law of this state. *B—— v. I——*, 22 Wis. 372.

In this alleged libel the particular fault charged against the plaintiff is, that he had been guilty of corrupt conduct in his official capacity as a senator. It seems to me that the conclusion is irresistible, that it is competent for the defendant to prove, if he can, that the reputation of the plaintiff in that particular was not good. The charge made against him is, that he has been guilty of official corruption; and if the defendant should succeed in proving that his general reputation was that of a corrupt officer, ought not that fact materially to mitigate the damages? Were the rule otherwise, the most pure, high-minded and honorable public officer, whose official character might be assailed, would be in no better position than the most corrupt and profligate official similarly situated. It is no answer to this argument to say that the right to attack the personal reputation of the plaintiff in his capacity as a citizen, in respect to the fault or offense

charged, is sufficient for the protection of the defendant. . Instances are not wanting of men who, in private life, have sustained and do sustain good reputations, and yet in public official capacities have been dishonest ; and corrupt. And, on the other hand, men who in private life were reputed to be dishonest and unscrupulous, have discharged public official duties with remarkable fidelity and honesty. Should a person of the former class bring an action against one who had libeled or slandered him by falsely charging him with corrupt conduct in office, if the defendant were confined to proof of the personal reputation of the plaintiff as a citizen, and prohibited from showing his profligacy and corruption as an officer, such plaintiff, as regards damages, would stand equally as well as though he were an honest and incorruptible public officer. This obviously would be a violation of the rule which permits evidence to be given of the plaintiff's bad reputation in relation to the particular fault. or offense charged in such slander or libel, and might, and probably would, work great injustice to the defendant.

But it may be said that in an action of a similar kind brought by a person of the latter class, to permit the defendant therein to give evidence of the general bad reputation of such person, without restricting such inquiry to his reputation for official integrity, the same injustice might be done the plaintiff, as, in the former case, would be done the defendant, by not allowing him to investigate such official reputation. Stated in another form, the argument is, that if the defendant may give evidence of the official reputation of the plaintiff in respect to the particular offense charged, where the alleged libel or slander charges particular official misconduct—and this for the reason that a different rule might work an injustice to him, then he ought to be restricted to such evidence, and should not be permitted to attack the general reputation of the

plaintiff, or his personal reputation as a citizen, because without such restriction injustice might be done the plaintiff. The question, as to whether it is competent in this action for the defendant to give evidence of the general reputation of the plaintiff without such restriction, is not before us on this appeal, except only as it may be incidentally involved in the argument and decision of questions which are presented directly for adjudication. The question here is, not whether evidence of the plaintiff's reputation *shall* be, but whether it *may* be, thus restricted.

But, speaking only for myself, I do not hesitate to say that were I called upon to decide the question upon principle, regardless of the authorities bearing upon it, I should be strongly inclined to hold that in such actions evidence to impeach the reputation of the plaintiff must be restricted to his reputation in respect to the particular fault or offense which the alleged libel or slander imputes to him.

It is said that a person who brings such an action puts his reputation in issue; but it seems to be more accurate to say that he thereby puts it in issue in the particular wherein he claims that it has been assailed.

Human reputation is complex in its nature. Because a man has a single vice or even more than a single vice, it does not necessarily follow from that circumstance that he is totally depraved. I speak of total depravity from the ordinary, and not from a theological standpoint. The man may have vices, and yet his virtues may so predominate over them, that it may truthfully be said that his general reputation is good. He may be an incorrigible liar, and yet strictly honest in all his dealings. He may be a great scoundrel in pecuniary matters, and yet perfectly chaste. And so examples almost without number might be multiplied, where virtues and vices may exist in the same character, the one predominating in certain respects, and the other in certain other respects.

Where a person's character for truth and veracity is falsely assailed, and he brings his action against the assailant to recover damages therefor, if his reputation for truth and veracity is good, on what sound principle can it be said that if such plaintiff is unchaste, or dishonest in business matters, or covetous, profane or a sabbath-breaker, the damages to which he would otherwise be entitled shall be reduced perhaps to a sum which is merely nominal? I will not pursue the subject, but will refer those who may wish to investigate it farther, to a few cases in which this principle has been somewhat discussed. *Conroe v. Conroe*, 47 Pa. St. 198; *Moyer v. Moyer*, 49 id. 210; *Atwood v. Impson*, 20 N. J. Eq. R. 150 (5 Green).

It follows that the circuit court erred in not permitting the defendant to give evidence of the reputation of the plaintiff for official honesty and integrity as a senator; and for that reason the judgment must be reversed.

VIII. The foregoing views render it unnecessary that we should pass upon the question as to whether the court erred in refusing the defendant's application for a continuance of the action.

*By the Court.*—The judgment of the circuit court is reversed, and a new trial ordered.