STATE OF MISSOURI, Respondent, *v.* DAVIS R. BOOGHER, Appellant.

March 20, 1877.

1. An individual may be prosecuted criminally for a libel upon a business corporation, without an allegation that the corporation has been injured thereby.

2. In an action for criminal libel, counts for distinct offenses may be joined in the same information, and the defendant sentenced for more than one offense at the same time; but there should be separate findings, and the judgment should apply each penalty to its own offense.

3. Where the judge who tries a cause dies after a motion for a new trial has been overruled, but before the bill of exceptions has been signed and before the time allowed for filing the same has expired, the succeeding judge should grant a new trial.

APPEAL from St. Louis Court of Criminal Correction.
*Reversed and remanded.*

*Marshall & Barclay,* for appellant, cited: 2 Whart. Cr. Law, 7th ed., sec. 2540, *c;* 4 Bla. Com. *150; Trenton Co. *v.* Perrine, 23 N. J. L. 408; Rammell *v.* Otis, 60 Mo. 365; Pollard *v.* Lyons, 3 C. L. J. 107; United States *v.* Maguire, 3 C. L. J. 273; The State *v.* Palmer, 4 Mo. 453; Wag. Stat. 1089, secs. 21, 23, p. 886, sec. 2; Tweed *v.* Lipscomb, 60 N. Y. 559; 3 Whart. Cr. Law, 7th ed., sec. 3397; Acts relating to St. Louis County, 130, secs. 31, 32; *In re* Jilz, *ante,* p. 243; Const. 1865, art. 4, secs. 27, 32; Kingmen *v.* Abington, 56 Mo. 46.

*H. A. Clover, F. J. Bowman,* and *C. P. Johnson,* for respondent, cited: 1 Whart. Cr. Law, sec. 415, and cases cited; 2 Whart. Cr. Law, sec. 2540, *c;* Commonwealth *v.* Sylvester, Bright. 331; The State *v.* Ambs, 20 Mo. 214.

HAYDEN, J., delivered the opinion of the court.

This is a criminal prosecution for an alleged libel upon the Life Association of America, a corporation engaged in the life insurance business. There are five counts in the information, only the first, third, and fifth of which need be considered. Each of these three counts charges a distinct

offense, and sets out different matter.  The form of the counts is substantially as follows :

"That  *  *  *  Davis R. Boogher, etc.,  *  *  * being persons of envious  *  *  *  minds and of most malicious dispositions, maliciously  *  *  *  intending as much as in them lay to injure, vilify, and defame the credit and business reputation of the Life Association of America, a corporation duly chartered according to the laws of the State of Missouri, wickedly, maliciously, and unlawfully did write and publish, and cause and procure to be written and published, a certain false, malicious, and scandalous libel of and concerning the said Life Association of America, on or about the 13th day of March, 1875, at St. Louis aforesaid, according to the tenor and effect following : [here follows the alleged libel, which purports to be a statement of the facts recited in an application by policy-holders to the State Insurance Department, praying an examination of the affairs of the Life Association] against the peace and dignity of the State."

The case was tried by Judge Colvin and a jury, and a verdict rendered, by which the jury found the appellant guilty as charged in the first count of the information, and assessed his punishment at a fine of $50; guilty as charged in the third count, and assessed the punishment at two months' imprisonment; guilty as charged in the fifth count, and assessed the punishment at a fine of $100.  Upon this verdict the court adjudged that the appellant pay a fine of $150, and be imprisoned in the work-house of the city of St. Louis for two months.  On March 14, 1876, the appellant filed his motion for a new trial, which motion was, March 23d, overruled.  On March 24th an appeal was granted to this court, ten days being allowed to appellant within which to file his bill of exceptions.  On April 3, 1876, upon a stipulation to that effect filed by counsel, twenty days' further time was given to appellant to file his bill of exceptions. On September 16th a bill of exceptions was presented to

the court for allowance and signature, but the court refused
to allow or sign it. Upon this the appellant, by leave of
court, filed a motion for new trial. On November 18th
this motion for new trial was overruled. On November 29,
1876, an appeal was allowed to this court, and a bill of ex-
ceptions filed, which appeal is the present appeal.

The facts that have rendered the recital of these matters
necessary are that on March 27, 1876, Judge Colvin became
ill, and was unable to do duty afterward; that on March
29th James C. McGinnis was appointed provisional judge;
that on April 12th Judge Colvin died; that Judge Cady,
having been appointed in Judge Colvin's place, entered on
the discharge of his duties on April 24th. The bill of ex-
ceptions presented to Judge Cady, and by him signed on
November 29th, contains the contents of the paper which he
had refused to allow as a bill of exceptions, and sets out facts
as above. This paper had previously been presented to the
counsel for the prosecution, on April 26th, when they refused
to consent to it, they contending that it was not full or
correct.

The appellant suggests the question, but appears not
much to rely upon the point, whether a corporation, as such,
can be the subject of a criminal libel. At the present day
there can be no doubt that it may. The reasons why it
should are not so numerous as in the case of a natural per-
son, but those which exist are as strong. A very large and
important part of the private business of the community is
now done under the form of corporations. The reputation
of persons who employ this form is as important to them as
is to him that of a person who deals in his individual capacity.
On the other hand, the public mischief, the danger to
good order and to the peace of the community, arises as
well from malicious defamation of private corporations as
from libelous attacks on natural persons. Moreover, as
business acts and relations involve moral and personal con-
duct, it is not merely in reference to their business that per-

sons might be defamed without redress, were libels on private corporations permitted. It would be against the reason of. the law, if, under the guise of attacking a mere legal entity, a libeler should be allowed to do a wrong to many which he could not safely perpetrate in reference to an individual. The objection, in truth, arises from conceptions which the different functions now accomplished by the corporate form have rendered obsolete, and we have no hesitation in holding that a person may be criminally prosecuted for libel upon a business corporation. See 2 Bishop's Cr. Law, 6th ed., sec. 934; 2 Whart. Cr. Law, 7th ed., sec. 2540; 23 N. J. L. 407; 9 Minn. 133.

It is next urged that there was no averment of special damage suffered by the corporation. But the rule invoked by the appellant, that, where the words are not in themselves actionable, special damage must be averred, is not applicable to a criminal prosecution for libel. Here the ground of the proceeding is not any damage sustained by the subject of the libel, nor is it even any injury actually done to the public. If it should appear that no damage was done to the person or corporation libeled, and that the public peace was not in fact disturbed, this would not defeat the prosecution. The ground of the criminal proceeding is the public mischief which the libel is calculated to produce, not that which it actually produces.

The points next to be considered are whether the counts charging separate and distinct offenses may be joined in one information, and whether, the jury having separately found the defendant guilty on three of these, and assessed distinct penalties, the court could render judgment to the full extent of the penalties so awarded. It is claimed that there was error in these respects, and we are referred to the cases of *The People* ex rel. v. *Liscomb*, 60 N. Y. 599, and *United States* v. *Maguire*, 3 C. L. J. 273. The Supreme Court of this State appears to have come, many years ago, to an opposite conclusion to that arrived at by the New York Court of

Appeals as to what was the common law of England on these points ; and an examination of the English authorities will confirm the opinion of our Supreme Court. It is noticeable that the language used by Lord Ellenborough in *Rex* v. *Jones*, 2 Camp. 131, though the case is not referred to, is substantially adopted by the Supreme Court in *Storrs* v. *The State*, 3 Mo. 9. Lord Ellenborough said : " In point of law there is no objection to a man being tried on one indictment for several offenses of the same sort. It is usual in felonies for the judge, in his discretion, to call upon the counsel for the prosecution to select one felony and to confine themselves to that, but this practice has since been extended to misdemeanors. It is the daily usage to receive evidence of several libels, and of several assaults, upon the same indictment," etc. No English cases appear to have been found denying this rule, and many are found which directly or indirectly confirm it, and show clearly that in cases of misdemeanor, at least, counts for distinct offenses may be joined in the same indictment, and the defendant sentenced as for more than one offense at the same time. *Rex* v. *Wilkes*, 4 Burr. 2527 ; *Young* v. *The King*, 3 Term Rep. 98, *per* Lord Kenyon ; *The King* v. *Johnson*, 3 Mau. & Sel. 539 ; *Regina* v. *Cutbush*, 10 Cox C. C. 489. In *The Queen* v. *Castro*, alias *Orton*, alias *Tichborne*, Law Rep. 9 Q. B. 350, the indictment was for perjury, and contained counts for two distinct offenses, one committed on the *Tichborne* trial before Bovill, C. J., in the Common Pleas, and the other before a commissioner in chancery. The defendant was found guilty, and sentenced to seven years' penal servitude on each count of the indictment.

In *The State* v. *Ambs*, 20 Mo. 214, where the indictment charged two distinct misdemeanors, in different counts, and the defendant was fined upon each count, the point was made that the sentence was erroneous and could not be corrected, but the court held it proper. There is no doubt that this is the law of this State in regard to misdemeanors.

As to felonies, Judge Napton said in *The State* v. *Porter*, 26 Mo. 206 : "If the several counts refer to different transactions, in point of fact, it is a matter of discretion with the court to compel the prosecutor to elect upon which count he will proceed, and the power ought to be exercised in cases where the offenses are distinct and of a different nature, and calculated to confound the defense." *Hildebrand* v. *The State*, 5 Mo. 548 ; *The State* v. *Jackson*, 17 Mo. 544 ; *The State* v. *Leonard*, 22 Mo. 449. In regard to sentences, it has been said that, in case of felonies, separate sentences can be passed upon a prisoner only in the cases and in the manner pointed out by the statute. Wag. Stat. 513, sec. 9 ; Ex parte *Meyers*, 44 Mo. 279. In cases of misdemeanor, like the present, the jurisdiction is under the common law, and there appears to have been no question in England, since the case of Wilkes, that for similar offenses the court may sentence for several distinct terms or penalties in succession. In Wilkes' case there were distinct informations for libel — one for No. 45 of the "North Briton," and the other for the " Essay on Woman " — but the sentence for both was pronounced as one sentence, and by it the term of imprisonment for the second offense was to begin at the expiration of the first term awarded upon the first offense. The punishment, however, was separately awarded to the separate offenses, in the sentences ; and where, as in the case at bar, the jury make separate findings and separate awards, the judgment should not lump the punishment, but should apply each penalty to its own offense. See the authorities above cited. Had this been done in the present case, it would have appeared upon the face of the judgment that section 2 of chapter 86 of Wagner's Statutes, page 886, in regard to the punishment of common-law offenses, was not violated by the award of an excessive fine. Taking the verdict and the judgment together with the information, it is obvious that this point of the appellant is not well taken. It is not claimed that there were not three distinct offenses.

It is next contended that the judgment is erroneous because it assumes to assess a further punishment, namely, hard labor in the work-house. This, it is said, is in violation of the section referred to. It is sufficient to say that there is nothing in the judgment or in this record showing that the defendant was sentenced to hard labor. The words are " that he be imprisoned in the work-house of the city of St. Louis for the term of two months," etc. We are referred to the 32d section of the act in regard to the Court of Criminal Correction, which is to be found on page 199 of the Session Acts of 1869, providing for imprisonment, in certain cases, in the work-house of the city of St. Louis. It is claimed that this section, or a part of it, is unconstitutional. But there are no facts before us to raise any such point, and, obviously, we cannot go beyond the record to pass upon questions of this kind. Upon the face of the record the only irregularity is that the judgment appears to award a fine of $150; and this is explained by the verdict. As to the place of confinement, it has been held by this court to be immaterial. In re *Jilz*, *ante*, p. 243. Even if it should be true, then, that the Legislature has no power to make local laws, adapted to peculiar situations, looking, not to the liberty or imprisonment of the citizen, but the regulations of confinement — as to which point there is no necessity for a decision — this would not avail the appellant here.

The appellant claims that the court below erred in not granting a new trial, because, as the judge who tried the case died before the time for perfecting the bill of exceptions expired, there was no way to obtain justice except by granting a new trial. The argument is that the accused had a right to an appeal ; a right to a review, by the higher court, of the alleged errors of the lower court on the trial ; that the rulings can be preserved only by a bill of exceptions, and that this can be allowed only by the judge who tried the case ; that the death of the judge cannot deprive the accused of a right which the law secures him ; that though the

granting of a new trial does not procure the allowance of the bill of exceptions, it does secure the right of review to the appellate court of the proceedings in the court below, and that this is the only way in which, under the circumstances, that right can be obtained. It is evident that the errors may be such as can be preserved only by a bill of exceptions; and if the constitutional principle is to be regarded which secures an equal operation of the laws as to all, a right of appeal in a criminal case cannot be granted to some, while in the same class of cases it is denied to others. A bill of exceptions, generally speaking, cannot be prepared without some delay; and it is common practice for counsel to take time for this purpose. The statute makes the rules of practice as to bills of exceptions in civil cases apply to trials for criminal offenses. Wag. Stat. 1105, sec. 26; and see *The State* v. *Marshall*, 36 Mo. 400. The appellant had ten days' time granted him to file his bill of exceptions, as a part of the proceedings by which the appeal was allowed. Before this time expired, Judge Colvin became seriously ill and ceased to perform his duty. A provisional judge was appointed on March 29th. On April 3d, when the ten days expired, the opposing counsel consented to an extension of time for filing the bill; an order of court was made accordingly, and before this extended time had expired Judge Colvin died. It is to the court or judge who tries the case that the appealing party must look for the allowance of his bill. The law does not oblige him to consult the opposing counsel. It appears in this case that various questions as to the admission of testimony and as to the giving of instructions arose during the trial, and as, before the time allowed to the appellant to perfect his bill of exceptions, the judge who tried the cause became incapable of action, and as it does not appear that the appellant was negligent in the matter, we think that the court below should have granted the motion for a new trial. The reasons which influenced the

Supreme Court in their opinions in *Woolfolk* v. *Tate*, 25 Mo. 598, and *Cocker* v. *Cocker*, 56 Mo. 180, seem to apply with still stronger force to the circumstances of this case.

Accordingly, the judgment of the court below will be reversed and the case remanded.   All the judges concur.