FINNISH TEMPERANCE SOCIETY SOVITTAJA *vs.* FINNISH SOCIALISTIC PUBLISHING COMPANY & another.

Worcester. January 19, 1921. — April 15, 1921.

Present: RUGG, C. J., BRALEY, CROSBY, PIERCE, & JENNEY, JJ.

*Corporation,* Charitable, Right to maintain action for libel. *Charity. Libel and Slander. Actionable Tort. Joint Tortfeasors.*

A corporation without capital stock, organized under R. L. c. 125, §§ 1, 2, " for the purpose of promoting temperance and morality in this Commonwealth, and of owning, establishing and maintaining a place for a reading room and library and for social meetings of its members," if subjected to public hatred, contempt or ridicule by the publication in bad faith and with malice of statements in print charging it with violation of law and with vile and reprehensible conduct in the management of its affairs, may maintain an action of tort therefor against those causing such publication, although the statements were substantially true and no specific damage resulted to the corporation, and in such an action general damages may be assessed.

A publishing company was organized and incorporated and arrangements were made between it and an already organized socialistic publishing corporation, the purpose and effect of which were, not to create an independent self-supporting corporation, but to organize, manage and use the newly organized corporation as a creature or mouthpiece of the socialistic corporation for the circulation of its propaganda and the advancement of its "organization work," and under this arrangement, the new corporation in bad faith and with malice published a libel of a charitable corporation. *Held,* that the charitable corporation might maintain an action of tort therefor against both the publishing corporations as joint tortfeasors.

If a charitable corporation sought by a bill in equity to enjoin the publication, in newspapers owned and controlled by two corporations, of libellous statements concerning its character and the conduct of its affairs, and in that suit a special precept in foreign attachment of property of the defendant was issued and served, and if demurrers to the bill were sustained and, by leave of court, the plaintiff under R. L. c. 159, § 6, amended the bill in equity into an action of tort for libel, it *cannot be held,* that either the suit or the action at law was begun by trustee process, or that the court was prevented from having jurisdiction of the case by R. L. c. 189, § 1.

TORT for libel.  Writ dated December 1, 1913.

In the Superior Court the action was referred to an auditor, whose findings of fact were "to be final as [to] all matters except the truth or falsity of the alleged libellous articles and the matter of malice in the publication thereof and as to the damage, if any, to the plaintiff." The description by the auditor in his report of the plaintiff corporation and of its activities is given in the opinion.

As to the circumstances of the publishing of the alleged libels, the auditor found as follows:

"The writer of the two letters, one Bjorklund who was a regular correspondent of the paper, saw this notice before he wrote the letters. When the editor of the 'Raivaaja' in charge of correspondence received the first letter he inquired of Bjorklund whether he could substantiate the charges and was assured by Bjorklund that he could. Publication was held up for several days and this and the inquiry of Bjorklund happened because of previous experiences of the editor touching the accuracy of Bjorklund's reports and also because Bjorklund objected to any alterations in his correspondence.

"There was no evidence of any malice or ill will toward the plaintiff on the part of Bjorklund or on the part of the defendants or any of their agents, except as may appear from the writing and the publishing of letters in the style and phraseology of those in the present case. Good faith in the ascertainment of facts, fair comment concerning them and lack of desire or intent to injure by the comment are all negatived by the phrases and style in which the slim items of fact are wrapped. I find that neither letter was written or published in good faith or without malice; and I make this finding of actual malice and of lack of good faith upon the evidence contained in the letters themselves and the acts of writing and publishing them and not upon any evidence outside of said letters and said acts."

The auditor also found as follows: "A corporation of this sort may have, and this plaintiff in fact has, a personality separate and distinct from that of its members and, possessing such personality, it has a character and reputation of its own. Such an association of those presumed to have similar tastes, desires, pursuits or social standing itself reflects some characteristics common

to all its members but its own character and reputation may differ from and be better or worse than the character or reputation of its individual members. A member may find it necessary to resign from such a corporation if it falls below his standard and likewise such a corporation to preserve its own reputation may find it necessary to expel a member who falls below its standard. An attack upon one of its members may unfavorably affect the corporation and an attack upon the corporation may affect its members. Whether the statements of the publication hereinafter referred to were libellous as to the members of the plaintiff or any of them or whether any member may have been damaged thereby I have not considered; but the character and reputation of the plaintiff corporation as such may be injured and that aspect I have considered."

Other material facts found by the auditor are described in the opinion. The action was heard by *Fosdick,* J., without a jury, upon the auditor's report as the only evidence. The defendant asked for the following rulings:

"1. Upon all the evidence the plaintiff is not entitled to recover.

"2. Upon all the evidence (the auditor's report) the plaintiff is not entitled to recover as against the defendant, the Finnish Socialistic Publishing Company.

"3. Upon all the evidence (the auditor's report) the plaintiff is not entitled to recover against the Raivaaja Publishing Company.

"4. The plaintiff, a corporation, not being organized for profit, and not having suffered any property damages, cannot recover in this action for injuries to its feelings or reputation.

"5. That the two defendants, standing in the relation of principal and agent, as alleged by the plaintiff cannot be joined in one action as parties defendant.

"6. That as the defendant, the Finnish Socialistic Publishing Company, did not in any way participate in the publication of the alleged libellous letters, and the auditor had so found, that then there can be no recovery as against this defendant.

"7. That since the auditor has specifically found that the two defendants herein were not joint tortfeasors, that then the Finnish Socialistic Publishing Company cannot be held liable.

"8. That since the plaintiff corporation suffered no loss to its

business or property, by reason of the publication, according to the auditor's report, that then there can be no recovery for injury to its reputation, character or feelings, apart from its property or business, as against either or both of these defendants.

"9. That the facts as found by the auditor reveal a case where the legal maximum of *damnum absque injuria* applies.

"10. That a corporation cannot recover in a libel suit for injuries to its feelings, character or reputation unless there is injury to its property or business.

"11. That in this case the auditor has found that 'the depression in the plaintiff's affairs was not caused by the publication,' and that as a matter of law, the auditor was not justified in assessing damages to the plaintiff for injury to its character and reputation.

"12. That since the auditor has found that 'The letters complained of appeared in the newspaper without the express knowledge, consent, direction or participation of the defendant, the Finnish Socialistic Publishing Company or any officer or agent thereof,' that then this defendant cannot be held liable for any damage resulting from such publication.

"13. That since the newspaper 'Raivaaja' was owned and edited by the Raivaaja Publishing Company, that it alone as a legal entity is solely responsible for what appears in the columns of its paper.

"14. That the two defendants herein named are separate and distinct legal entities.

"15. That the Raivaaja Publishing Company was the sole publisher of the alleged libellous articles.

"16. That a corporation cannot sue for a libel in respect of anything reflecting upon the members thereof personally.

"17. That the major portion of the alleged libellous articles is directed against the individual members of the plaintiff corporation, but for this the plaintiff cannot recover in this action.

"18. That the plaintiff cannot recover in this case because no damage to its property is alleged in the declaration nor was it proved at the trial.

"19. That the plaintiff, not being organized for business or profit, cannot maintain this action for any possible injury to its feelings, dignity, or reputation.

"20. That the amount of damages assessed is excessive and that the plaintiff is only entitled to nominal damages."

The judge specifically denied the requests numbered 1, 2, 3, 5, 6, 7, 9, 11, 12, 13, 15, 17, 18, and 20, and also those numbered 4, 8, 10, and 19, except in so far as they applied to the feelings of the plaintiff, and to its dignity so far as the words "injury to its dignity" include wounded feelings as a basis of recovery; and ruled that a corporation can have no feelings to be injured in the sense in which the law makes injury to feelings a basis of recovery in an action for libel, and did not award damages for any injury to any feelings of the plaintiff or to the feelings of its members.

The judge granted the request numbered 14 as a proposition of law and not as negativing his findings and those of the auditor as to the relations between the defendants in the publication of the libel, also granted the request numbered 16; and found for the plaintiff in the sum of $1,000 and interest from the date of the writ against both defendants.

The defendants alleged exceptions to the refusal to grant their requests as asked. The plaintiff alleged an exception "to the exception, only," which the judge attached to his denial of the defendants' requests numbered 4, 8, 10, and 19, and to his finding and ruling "that a corporation can have no feelings to be hurt or injured in the sense in which the law makes injury to feelings a basis of recovery in an action for libel."

In their brief before this court, the defendants stated as the "questions . . . involved in this case," the following: (1) "That the court has no jurisdiction, it being a libel case commenced by trustee process;" (2) "That the two defendants cannot be joined in the same action;" (3) "That a corporation cannot recover in an action for libel without alleging and proving special damage to its business or property."

The case was submitted on briefs.

*M. M. Taylor,* for the plaintiff.

*G. E. Roewer, Jr., & J. Bearak,* for the defendants.

BRALEY, J. The defendants, to which we shall severally refer as the socialistic company and the publishing company, are charged with defamation of the plaintiff, a corporation without capital stock, organized under R. L. c. 125, §§ 1, 2, "for the pur-

pose of promoting temperance and morality in this Commonwealth, and of owning, establishing and maintaining a place for a reading room and library and for social meetings of its members." It owns and occupies a building in the city of Worcester, fitted with a bowling alley and halls, gymnastic equipment, a small library of plays and Finnish books, and rents a tenement in the top story. It holds regular meetings on the first day of the week for the transaction of "routine business . . . and talks on temperance or religion," and on secular days entertainments are provided consisting of either "dancing, dramatics, speaking, etc," to which the public are invited upon payment of a small admission fee. A counter also is provided where fruit, tonics, candy, cigars and coffee are sold, and the premises generally can be used by members for various activities "such as a singing group, a gymnastic class, dramatic rehearsals, etc." While the organization was in successful operation there appeared in a newspaper printed in the Finnish language, and issued by the publishing company, and "having a circulation of about six thousand copies, two hundred fifty or three hundred of which were subscribed for in Worcester," two letters from an anonymous correspondent, which with accurate translations appear in the declaration. The auditor whose report by agreement of parties is to be final on "all matters except the truth or falsity of the alleged libellous articles and the matter of malice . . . and . . . the damage," and which was the only evidence introduced at the trial, finds, that these letters referred to the plaintiff substantially as alleged. The material statements in the first letter read as follows: "This is the same national temperance sour milk broth cake bakery in which they prayed so fervently, baked national buns and fed them to our kinsfolk as 'medicine' that would secure for every youngster minister of the Suomi Synod and every provocator a regular position as a minion. But as all pious wishes, prayers, tears, sighs and moans came to naught, god, prayer books, and all other holy things and stunts were thrown out through the back door. And the old 'holy place' the 'Golgotha' of glorification and repentance was made a 'gambling and gaming den.' . . . And when crookedness does not succeed a quarrel starts and they fly at each other's throats," and the plaintiff is the "old holy secret bar room of the Synod. . . . And those of our people who will

not join themselves to this temperance wash of these drinkers on the sly, would perish without help if they had no shepherds or guides to lead these helpless and erring citizens to the lower floor gambling dens." The plaintiff's leaders are "minions, students for the ministry, scabs, men who have been in the reformatory, men who have run away to this country, wife deserters and honorable members of the Synod of all different degrees of honor." The second letter charges that the plaintiff profits through gambling with the "board of pegs and bowling alley," and that there is secret "gambling," and that scenery was "taken away, stolen or swiped, taken by their own leave. As I don't know which best suits the 'Kamppa' people [referring to the plaintiff] or that committee weighing the rights or wrongs it is difficult for me to give this act its exact name." The plaintiff is a "pious nest of hypocrites, harmonizers and brawlers." "The Synod" referred to is a college to train ministers for the Finnish Lutheran Church established by the Finnish National Brothers Temperance Society of America with which the plaintiff has been affiliated. But after surrendering its charter and becoming independent, "the aims, purposes and practices of the plaintiff continued as before when it was a branch of the national society."

The defendants' answer besides a general denial pleads the truth, which, if established, is a justification unless actual malice is shown. R. L. c. 173, § 91. The auditor, whose interpretation of these statements is supported by the ordinary meaning of words, states, that the charges in the first letter are not true. The first charge in the second letter is found to be substantially true. "It was customary in the lower hall to pay the 'manager' twenty-five cents for six rings which each contestant tossed to a board studded with pegs and the one who hung the fewest rings on the board paid, sometimes the cost of the rings for all and sometimes five cents' worth of tonic, candy etc., for each contestant, and this was known to the officers of the society. Also some contests were held through the week for which the plaintiff offered as prize a dollar, and once a rocking chair. Occasionally, but secretly, the stakes were small sums of money. At bowling the loser was expected to pay the charge. On one or two occasions several persons gathered late at night after the others had gone home, in the boiler room, locked the door and

played poker for money. This was not known to any of the officials of the plaintiff." The second charge is construed as not describing "a technical theft and would not be understood to do so by the reader," and on this ground after referring to the circumstances out of which the transaction arose, concludes, that it is substantially true. The third charge being a mere repetition in part of the first charge in the first letter is not considered specifically. The report however is explicit, that neither letter was written or published in good faith and without malice, and the finding of actual malice even if founded upon the letters, and the acts of writing and publishing them, being warranted, this defence fails. *Perry* v. *Porter*, 124 Mass. 338. *Conner* v. *Standard Publishing Co.* 183 Mass. 474, 480. *Hubbard* v. *Allyn*, 200 Mass. 166, 173.

It is further found that the letters were the "subject of wide comment and speculation on the part of the Finnish people in Worcester, both members and non-members of the society, and . . . the publication of said letters was calculated to and did injury to the character and reputation of the plaintiff. . . ."

If a natural person, the plaintiff, having been subjected to public hatred, contempt and ridicule, would be entitled to general damages. *Craig* v. *Proctor*, 229 Mass. 339, 340, 341. *Robinson* v. *Coulter*, 215 Mass. 566, 570. But, special damages not having been either alleged or proved, the question is whether the plaintiff corporation has any cause of action.

While it must be managed by officers empowered to conduct its affairs, yet it has been said that a corporation cannot sue for libel upon their character or reputation unless the libel bears a direct relation to the trade or business of the corporation. *Brayton* v. *Cleveland Special Police Co.* 63 Ohio St. 83. The libel however in the present case directly, distinctly and unsparingly assails the corporation. It is accused of gross mismanagement of its corporate affairs, and even criminal use of its property to the detriment and personal welfare of its members, and injury to public morality.

The ancient doctrine that a corporation because incapable of passion or emotion could not be held liable for acts involving malice of its officers or agents acting within the general scope of their authority or employment has long since been outgrown.

*Reed* v. *Home Savings Bank,* 130 Mass. 443, 445. *Krulevitz* v. *Eastern Railroad,* 140 Mass. 573. *Fogg* v. *Boston & Lowell Railroad,* 148 Mass. 513. *Burt* v. *Advertiser Newspaper Co.* 154 Mass. 238, 245. *Howland* v. *George F. Blake Manuf. Co.* 156 Mass. 543. *Fay* v. *Harrington,* 176 Mass. 270, 272. *White* v. *Apsley Rubber Co.* 194 Mass. 97. *Kane* v. *Boston Mutual Life Ins. Co.* 200 Mass. 265. *Jackson* v. *Old Colony Street Railway,* 206 Mass. 477, 486. *Eastern Counties Railway* v. *Broom,* 6 Exch. 314. *Philadelphia, Wilmington & Baltimore Railroad* v. *Quigley,* 21 How. 202. *National Bank* v. *Graham,* 100 U. S. 699, 702. And "a manifestation of malevolent motives might enhance damages under our rule allowing damages for injured feelings." *Burt* v. *Advertiser Newspaper Co.,* supra. See *Stanley* v. *Sangerville,* 119 Maine, 26. The "great object of an incorporation is to bestow the character and properties of personality and individuality upon the legal entity called the corporation, as distinct from the person of the corporators." *Berger County Mutual Assurance Association* v. *Cole,* 2 Dutch. 362, 365. Compare *Metropolitan Saloon Omnibus Co. Ltd.* v. *Hawkins,* 4 H. & N. 87, 90. A corporation therefore may have a reputation which is equally as valuable to it as to a natural person, and may be injured in that reputation in the same way. *Trenton Mutual Life & Fire Ins. Co.* v. *Perrine,* 3 Zabr. 402, 408. The conditions of modern society afford ample illustration that "a very large and important part of the private business of the community is now done under the form of corporations," and "the public mischief, the danger to good order and to the peace of the community, arises as well from malicious defamation of private corporations as from libellous attacks on natural persons." See *State* v. *Boogher,* 3 Mo. App. 442. It was said by Lord Esher, M. R., in delivering judgment in *South Hetton Coal Co. Ltd.* v. *North-Eastern News Association, Ltd.* [1894] 1 Q. B. 133, 138, 139, 141, an action for libel by a trading corporation, "the law of libel is one and the same as to all plaintiffs; and that, in every action of libel, whether the statement complained of is, or is not, a libel, depends on the question — viz., whether the jury are of opinion that what has been published with regard to the plaintiff would tend in the minds of people of ordinary sense to bring the plaintiff into contempt, hatred, or ridicule, or to injure his character. The question is really

the same by whomsoever the action is brought — whether by a person, a firm, or a company. . . . With regard to a firm or a company, it is impossible to lay down an exhaustive rule as to what would be a libel on them. But the same rule is applicable to a statement made with regard to them. Statements may be made with regard to their mode of carrying on business, such as to lead people of ordinary sense to the opinion that they conduct their business badly and inefficiently. If so, the law will be the same in their case as in that of an individual, and the statement would bé libellous. . . . It is not necessary to prove any particular damage; the jury may give such damages as they think fit, having regard to the conduct of the parties respectively, and all the circumstances of the case." And in the same case Lopes, L. J., said (page 141): "I am of opinion that, although a corporation •cannot maintain an action for libel in respect of anything reflecting upon them personally, yet they can maintain an action for a ,libel reflecting on the management of their trade or business, and this without alleging or proving special damage. . . . The words complained of must attack the corporation or company in the method of conducting its affairs, must accuse it of fraud or mismanagement, or must attack its financial position." See in this connection *Journal Printing Co.* v. *Maclean,* 23 Ont. App. 324; *Aldrich* v. *Press Printing Co.* 9 Minn. 133, 135, 136; *Reporters' Association of America* v. *Sun Printing & Publishing Association,* 186 N. Y. 437, 440; *Gross Coal Co.* v. *Ross,* 126 Wis. 24; *Louisville, Cincinnati, & Charlestown Railroad* v. *Letson,* 2 How. 497, 558.

If benevolent, charitable and religious corporations have no reputation which can be impaired or destroyed by libel unless special damages in some form appear, then an incorporated society supported by an endowment for the purpose of, and engaged in, the maintenance of religious worship, may easily become the prey of the libeller, who remains immune, because not being connected with mercantile transactions of monetary profit, or gain, or loss of any sort, it cannot be injured. The plaintiff's officers have no cause of action except as they have been personally maligned. *Swan* v. *Tappan,* 5 Cush. 104, 108, 109. But the good name of the plaintiff, if the ends for which it was incorporated are to be accomplished, is incidental to its very existence.

Its prosperity depends as the auditor in substance has found upon an unsullied reputation, which would be greatly affected, if not wholly ruined, by false and malicious statements charging it with violation of law and with vile and reprehensible conduct in the management of its affairs. If not in any sense a money making concern, the plaintiff, a citizen of this Commonwealth, is promoting an enterprise, or engaged in an occupation recognized, fostered, and protected by our laws. *Producers' Bank v. Farnum,* 5 Allen, 10. And unless the present action can be maintained, the wrong practised upon it, and the injury sustained, cannot be redressed: it is remediless. We are accordingly of opinion, that the plaintiff even if insensible to mental suffering and distress as ordinarily understood, is entitled to general damages, the amount of which assessed by the judge is not as matter of law shown to be erroneous. *Bishop v. Journal Newspaper Co.* 168 Mass. 327. The publishing company nominally owns and edits the newspaper in which the libels were published without the immediate knowledge or participation of the socialistic company. But the auditor on evidence properly admitted finds that this company has been organized as a separate corporation for the sole purpose of taking ostensible title to, and publishing this and one other newspaper, and without recital of his conclusions as to intercorporate relations showing complete identity of interest, his general finding is, that the purpose and effect of incorporation of the publishing company and of the arrangements between the defendants were not to create an independent self-sustaining corporation, but to organize, manage and use it as a creature or mouthpiece of the socialistic company for the circulation of its propaganda and advancement of its "organization work." The publishing company however cannot escape. It is a corporate entity until dissolved, and is liable for its own wrongdoing. *United Zinc Co. v. Harwood,* 216 Mass. 474. *Howland v. George F. Blake Manuf. Co.* 156 Mass. 543. But this technical distinction as between themselves cannot on the record be invoked to defeat the plaintiff to whom they are jointly and severally responsible. *Miller v. Butler,* 6 Cush. 71. *Curtis v. Mussey,* 6 Gray, 261. *Hanson v. Globe Newspaper Co.* 159 Mass. 293, 302, 303. *Oulighan v. Butler,* 189 Mass. 287. *Aldrich v. Press Printing Co.* 9 Minn. 133. *Wilson v. Noonan,* 27 Wis. 598, 609.

*Smith* v. *Utley,* 92 Wis. 133. *Parkes* v. *Prescott,* L. R. 4 Ex. 169.

By R. L. c. 189, § 1, an action of tort for slander or libel cannot be commenced by trustee process, and where a plaintiff sues in this form the court has no jurisdiction to enter judgment. *McDonald* v. *Green,* 176 Mass. 113. But, without deciding whether the question should be raised by a motion to dismiss presented at any time before judgment, we find nothing in the record showing that the present action is within the statute. If, however, it is assumed, as stated in the defendants' brief, that after the rescript in *Finnish Temperance Society Sovittaja* v. *Raivaaja Publishing Co.* 219 Mass. 28, the plaintiff under R. L. c. 159, § 6, amended its suit in equity, in which a special precept in foreign attachment had issued, into the present action at law,[*] it is plain that neither the suit nor the action was begun by trustee process.

We discover no error in the refusals of the defendants' requests in so far as they were not granted, nor in the rulings made by the trial judge, and, the plaintiff's exceptions requiring no comment, the order as to each party must be

*Exceptions overruled.*

---

[*] The record before this court included no proceedings in equity, although, as stated in the opinion, the defendants referred to the matter in their brief.