CYRUS ALDRICH, Respondent, vs. THE PRESS PRINTING COMPANY, Appellant.

APPEAL FROM THE DISTRICT COURT OF RAMSEY COUNTY.

An action for libel may be maintained against a corporation aggregate.

Libelous matter published against a candidate for a public office is not a privileged communication.

Points and authorities for Appellant.

I. The criticisms, comments or charges in a public journal upon a public officer or upon the official conduct of one while in office, and who is again a candidate for high official preferment, even where they impute the commission of a public offence, are *quasi* privileged, and not, as in ordinary cases, presumed to be malicious.    Hence, in an action for libel against the publisher of a public journal, founded upon such criticisms, comments or charges, *express* malice must not only be averred but proved; and in order to lay a foundation for such proof it must be averred that the offensive publication was made without probable cause.    5 *John.* 526 *to* 531; 13 *Wend.*, 473; 23 *Id.*, 28; 21 *Id.*, 325; 2 *Wheaton's Selwyn*, 1061 *to* 1066; 6 *How. Pr. R.*, *p.* 366, *sec.* 2; 7 *John.*, 193; 19 *Barb.*, 111; 16 *N. Y. R.*, 369; 3 *Denio*, 110; 3 *How. U. S.*, 290, 291, *or* 15 *Curtis*, 449, 450.

vol. ix.—18

II. Proof of express malice being necessary to sustain an action for libel founded upon a *quasi* privileged publication, it cannot be maintained against a body politic or corporate—it being incapable of express malice. 1 *Bouvier's Inst., sec.* 193; *Angel & Ames on Corp., sec.* 388.

III. *Malice* being the *gist* of the action of libel, and the only difference between *express* and *presumed* malice being in the manner of proof, and a body corporate being a purely intellectual and ideal existence, and consequently incapable of malice, no action for libel will lie against it. 1 *Bouvier's Inst., sec.* 193; *Angel & Ames on Corp., sec.* 388; 16 *N. Y. R.*, 369; 4 *U. S. Dig., p.* 434, *sec.* 282; 15 *Conn.*, 327.

IV. The alleged causes of action set up in the complaint are improperly mixed up and commingled—each cause of action must be separately stated.

Points and authorities for Respondent.

I. An action of libel against a corporation can be maintained: the old doctrine that a corporation aggregate is not capable of malice is abandoned. The more modern and correct doctrine holds them liable for all torts which work injuries to others whether direct and intentional or arising from their own negligence. 96 *Eng. Com. Law. R.*, 115, 121; 22 *Conn.*, 531; 14 *Id.*, 146; 10 *Id.*, 384; 35 *Penn.*, (2 *Casey,*) 302; 2 *Hill*, 631; 2 *Eng. Law & Eq. R.*, 406; 21 *Howard U. S. R.*, 202.

II. An averment of express malice or want of probable cause in a complaint for libel is not necessary.

III. The fact of express malice or want of probable cause, when necessary to be established, is a matter not of pleading, but relates to the *onus* of proof on the trial.

IV. That the matter charged is libelous admits of no doubt. If Defendants seek to protect themselves by reason of the publication having been made under circumstances giving it a privileged character it rests with them on the trial to prove those circumstances, and if they are matters proper to be pleaded at all they must be set up as a defence in the answer.

V. The second count clearly substantiates charges of express malice. 4 *Comst.*, 91; *pt.* 2, *vol.* 2, *Sanders' Plds. & Ev.* (5th *Am. ed.*) 913, 914.

D. COOPER, Counsel for Appellants.

F. R. E. & W. B. CORNELL and H. R. BIGELOW, Counsel for Respondents.

*By the Court*—FLANDRAU, J.—This is an action for a libel brought by the Plaintiff against the Defendant, a corporation, for the publication of libelous matter in a newspaper published by the Defendant. The complaint is demurred to upon the ground that the matter charged as libelous was a privileged or *quasi* privileged communication, which, to be libelous, must have been published with express malice, and without probable cause, and that the Defendant is a corporation, and consequently incapable of the commission of an offence depending upon sentiment or passion such as malice.

Theoretically a corporation is perhaps incapable of passion. I say perhaps, because upon an anlaysis of the construction and practical operation of these bodies the theory becomes invested with considerable doubt. That they should possess this attribute in law, in order to harmonize their obligations and liabilities with those of individuals prosecuting the same enterprises, there is not only no doubt, but an imperative necessity. Corporations have almost entirely supplanted individual action in many branches of industry. If a citizen sets out on a journey he will find himself almost exclusively in the hands of corporations until his return. The stages, rail cars, and steamboats by which he is transported, the hotels at which he is entertained, the theatre at which he may be amused, and the very newspaper by which he is informed of the events of the day, are generally the property of and controlled by corporations. Manufactures, commerce, mining, lumbering, in fact, almost every department of human industry is largely

filled by corporations. It is difficult to see why these bodies should be exempt from liabilities depending upon an evil intent or a bad passion, when an individual committing the same offence would be held liable. These corporations may be composed of one man or several. In everything they do, although expressing themselves through agents and officers, they act with as much deliberation, design, and intelligence as an individual. Take, for example, the case of a corporation established for the publication of a newspaper. The members of this body become hostile to a citizen and determine to injure him. They assemble in their corporate capacity, and resolve to circulate an infamous libel concerning him. One member pens it, and the rest approve. The ensuing morning it is read by thousands, and a citizen who was the day before above suspicion, stands before the community branded with crime and infamy. The position that this corporation, being a purely intellectual and ideal existence, is incapable of malice, because malice is an emotion of the heart—a passion— is too refined a fiction for tolerance in the practical affairs of life at the present day. The old doctrine that corporations aggregate could not commit torts, was always considered questionable, and we believe that the law has now been fully established to the contrary. The cases which will be reported with Respondent's brief, under his first point, leave very little doubt upon this question. We have not succeeded in finding any adjudicated case in which the point has been made directly in an action against a corporation aggregate for libel, yet many are analogous in principle, involving the elements necessary to constitute a libel. We think the demurrer is not well taken on this point.

The previous discussion has proceeded upon the ground that the publication in this case was of a privileged character, requiring allegations of express malice to sustain it. Such, however, is not the case; but was it of that character the malice is sufficiently averred in each count of the complaint.

The Defendant insists that it appears from the complaint that the Plaintiff was a candidate for the position of Senator of the United States at the time of the publication of the article, and that

the Defendant, as a public journal, was privileged to make such comments upon his character as it saw fit, even where they impute the commission of a public offence, and that under these circumstances they will not be, as in ordinary cases, presumed to be malicious.    It nowhere appears from the complaint that the Plaintiff was a candidate for the United States Senate except by inference from the libelous article incorporated therein, which speaks of persons proposing the Plaintiff as a candidate for the United States Senate, and of his having aspirations for that position, and of his expecting to receive the votes of the Legislature for United States Senator.    Now we do not understand that the Plaintiff affirms any part of this article by inserting it in his complaint; on the contrary, he alleges the whole of it to be false, defamatory and malicious.    Nothing, therefore, can be collected from the article itself as representing the true relation of the parties at the time of the publication.    If it was uttered under any peculiar circumstances that brings it within the class of privileged or *quasi* privileged communications, they must appear by direct averment in the complaint or answer.

But would such a condition of things as is claimed by the Defendant, to wit, that the Plaintiff was a candidate for a public office, and the Defendant a public journal, in any manner change the position of the latter in an action for a libel published under such circumstances?    There are certain relations in life which, when charges are made against another of crimes or offences, take away the presumption of malice which otherwise attaches to such charges in the absence of these special relations.    In *White v. Nichols*, 3 *How. U S.* (*S. C.*) *Rep.*, 286–7, the court, to a certain extent, defines these relations, as follows:

"1. Whenever the author and publisher of the alleged slander acted in the *bona fide* discharge of a public or private duty, legal or moral; or in the prosecution of his own rights or interests. For example, words spoken in confidence and friendship as a caution, or a letter written confidentially to persons who employed A as a solicitor, conveying charges injurious to his professional character, in the management of certain concerns which they had

Aldrich, v. Press Printing Company.

intrusted to him, and in which the writer of the letter was also interested.

"2. Anything said or written by a master in giving the character of a servant who has been in his employment.

"3. Words used in the course of legal or judicial proceedings, however hard they may bear upon the party of whom they are used.

"4. Publications duly made in the ordinary mode of parliamentary proceedings, as a petition printed and delivered to the members of a committee appointed by the house of commons, to hear and examine grievances."

Under these and similar circumstances the Plaintiff must not only prove the fact of the publication, but also the malicious intent with which it was done. Will the case under consideration bear this test?

Freedom of the press and freedom of speech are equally sacred, and equally protected by the Constitution. Section 3 of the bill of rights provides that "the liberty of the press shall forever remain inviolate, and all persons may freely speak, write and publish their sentiments on all subjects, being responsible for the abuse of such right." In this country almost all offices are elective. The press does not possess any immunities, not shared by every individual. In every election the same freedom of discussion of the merits and demerits of candidates is allowed equally to press and people, and every citizen can claim to be interested in the choice of his rulers. Now can it be said that every household visitation made by itinerant politicians poisoning the minds of electors with libelous and slanderous charges against candidates, every public harrangue filled with similar matter, every clubroom discussion in which such charges are bandied about with licentious freedom and exaggeration, are privileged communications, and impose upon the injured party the necessity of proving that they were uttered and published with express malice? We have never supposed that the freedom of speech even in this country could legally be carried to such an extent. Yet, if such is the law as to an article published in a public journal, there can be no good

reason shown why it does not extend to all channels of communication between man and man during the pendency of an election. We think a public journal or an individual who indulges in defamatory assertions about candidates for office is equally liable for his acts with those who commit the same offence against private individuals.

The demurrer to the complaint is not well taken, and the order overruling it is affirmed.