HORACE B. JOHNSON, Respondent, v. ST. LOUIS DISPATCH COMPANY, Appellant.

June 26, 1876;

1. A printing and publishing corporation may be held liable in a civil action for libel.

2. To publish in writing an expression of belief that one has committed a felony is actionable per se; and the fact that the reasons for the belief are also given will not affect the question, unless those reasons explain away the charge.

3. The words "H. B. J., who disgraced the office now filled by N. C. E., was once accused of stealing a stud-horse. He sued the party of accusers, and at the trial a verdict was brought in for defendants, thus virtually saying that he did steal the horse." Held, libelous.

APPEAL from St. Louis Circuit Court.

Affirmed.

*Marshall & Barclay*, for appellant, cited : Hall *v.* Adkins, 59 Mo. 144 ; Towns. on Slander and Libel, 526, sec. 335 ; Sparkham *v.* Pye, Cro. Jac. 532 ; Stokes *v.* Arcy, 8 Jones L. 66 ; Gray *v.* Wayle, Story, 159 ; Blanchard *v.* Fisk, 2 N. H. 398 ; Nelson *v.* Musgrove, 10 Mo. 648 ; Hodgson *v.* Scarlett, 1 B. & Ald. 233 ; Tozer *v.* Mashford, 4 Eng. Law & Eq. 451 ; Harrison *v.* King, 4 Price, 45 ; Hancock *v.* Winter, 7 Taunt. 205 ; Bush *v.* Smith, 2 Jones, 157 ; City of St. Louis *v.* Russell, 9 Mo. 507 ; Blair *v.* Perpetual Ins. Co., 10 Mo. 559 ; Ruggles *v.* Collier, 43 Mo. 353 ; Bank of Louisville *v.* Young, 37 Mo, 398 ; Hannibal & St. Jo. R. R. Co. *v.* Marion County, 36 Mo. 294 ; Childs *v.* Bank of Missouri, 17 Mo. 213 ; Orr *v.* Bank of United States *et. al.*, 1 Ohio, 28 ; Gillett *v.* Missouri Valley R. R. Co., 55 Mo. 315 ; Underwood *v.* Newport Lyceum, 5 B. Mon. 129 ; Van Brandt *v.* Schenk, 13 Johns. 414 ; Philadelphia R. R. Co. *v.* Witts, 4 Whart. 143 ; Illinois Central R. R. Co. *v.* Downay, 18 Ill. 359 ; MacManus *v.* Cricket, 1 East, 106 ; St. Louis & Chicago R. R. Co. *v.* Dalby, 19 Ill. 353 ; Stevens *v.* Midland County R. R. Co., 10 Exch. 352 ; The State *v.* Great Works Mill and Mnfg. Co., 10 Me. 41 ; McClelland *v.* Bank of Cumberland, 24 Me. 566 ; Mali *v.* Lord, 39 N. Y. 382 ; Wright *v.* J. & S. Wilcox, 19 Barb. 343 ; Mason *v.* Styles, 21 Mo. 374 ; Douglas *v.* Stephens, 18 Mo. 367 ; The State *v.* Field, 49 Mo. 271 ; Maloney *v.* Bartley, 3 Camp. 210 ; Hecker *v.* De Grost, 15 How. Pr. 314.

*Lee & Adams* and *Henderson & Shields*, for respondent, cited : Gillett *v.* Missouri Valley R. R. Co., 55 Mo. 315 ; Maynard *v.* Firemen's Fund Ins. Co., 34 Cal. 48 ; Goodspeed *v.* East Haddam Bank, 22 Conn. 530 ; Philadelphia, Wilmington & Baltimore R. R. Co. *v.* Quigley, 21 How. 202 ; Whitfield *v.* Southeastern Ry. Co., 96 Eng. Com. Law Rep. 113 ; Atlantic and Great Western R. R Co. *v.* Dunn, 19 Ohio St. 162 ; New Orleans, Jackson & Great Western R. R. Co. *v.* Baily, 40 Miss. 453 ; Taylor *v.* Grand Trunk Ry. Co., 48 N. H. 304 ; Hopkins *v.* Atlantic

& St. Louis R. R. Co., 36 N. H. 9; Malecek *v.* Tower Grove & Lafayette R. R. Co., 57 Mo. 17; Childs *v.* Bank of Missouri, 17 Mo. 213.

BAKEWELL, J., delivered the opinion of the court.

This is an action for libel. The petition states that defendant is a corporation engaged in printing and publishing a newspaper called the *St. Louis Dispatch*, in pursuance of its corporate powers, and that whilst so engaged, on August 5, 1874, whilst plaintiff was an attorney at law, practicing his profession in Jefferson City and elsewhere in Missouri, defendant, maliciously intending to deprive plaintiff of his good name as a citizen and in his profession, and to injure his business, did print and publish in the *St. Louis Dispatch* the following false, scandalous, and malicious defamatory words concerning plaintiff:

" Then there was H. B. Johnson " (meaning plaintiff), " who disgraced the office now filled by H. Clay Ewing. He " (meaning plaintiff) " was once accused of stealing a stud-horse in Lafayette county, Mo. He " (meaning plaintiff) " sued the party of accusers, and, at the trial, where four Federal office-holders made a part of the jury, a verdict was brought in for the defendants; thus virtually saying that he ". (meaning plaintiff) " did steal the horse."

*Innuendo.* That this was meant to charge plaintiff with the crime of grand larceny.

The petition says that all the allegations concerning plaintiff in said publication are false, and were published in a regular issue of defendant's newspaper, by the direction and knowledge of its managers, in due course of defendant's business.

Damages were laid at $50,000.

To this petition defendant demurred, on the ground that the petition does not set forth facts to constitute a cause of action. The Circuit Court, at special term, sustained the demurrer, and, plaintiff declining to plead further, judgment was entered for defendant. On appeal to general term this

judgment was reversed. Defendant filed a motion for a rehearing, which being overruled, the cause is brought to this court by appeal.

It is claimed by appellant that the Circuit Court at special term properly sustained the demurrer, first, because the words set out constitute no libel *per se;* and, second, because a corporation cannot be guilty of libel.

1. It is argued by appellant that, to make the words libelous *per se*, they must plainly charge a criminal offense, and that these words do not charge. plaintiff with grand larceny, but say that he was accused by others of grand larceny, which is a different matter.

But these words set out in the petition, in their plain signification, say that the publishers of the alleged libel think plaintiff a horse thief, and it has been held actionable to say of a man: "I think. he is a horse thief." *Dickey* v. *Andros*, 32 Vt. 55. So, asking—as to a forgery—whether the witness did not think it was in G.'s handwriting, and asserting, "I have shown it to persons who said it was in G.'s handwriting," was held to show intent to impress a belief of G.'s guilt of forgery. *Gorham* v. *Ives*, 2 Wend. 534. "I am told that Muma was the man that killed the peddler, and I believe it" were the words. Defendant pleaded that he had been told so. Held insufficient. *Muma* v. *Hauner*, 1,724 Com. D. B. 293.

The rule that, in actions of this nature, words must be taken *mitiori sensu* is now entirely abandoned. The words must be taken in the plain, obvious sense in which they strike the common understanding of the every-day hearer. Now, here it is said of plaintiff that he disgraced an honorable office, and immediately after, as a reason apparently for this serious imputation upon his character, it is alleged that he was accused of stealing a horse; that those who charged him with it were by a jury acquitted of wrong in making the charge; and that this was virtually saying that defendant stole the horse. Instead of sending the antidote with

the poison — as in the case of one who says, " he is a thief, for he owes money which he won't pay," thus making it clear that no felony is imputed — the additional words are rather a barb to the shaft to make it stick in the wound.

As a rule, a court, on a demurrer to a petition in an action for libel, will not give a mild construction to the words, but will see if there be anything in the language which, by reasonable intendment, is actionable. *Moover* v. *Pigott*, 4 I. R. C. L. 54. And ambiguous, figurative, and even ironical language will be understood according to the sense it naturally conveys to the ordinary understanding. One-half of the English language, as has been truly said, is interpreted by the context. It has been held actionable to say, " You are no thief;" and also to say of a man, " I know what Snell is, and I know what I am ; I never committed the crime against nature." *Snell* v. *Webling*, 2 Lev. 150.

We are of opinion that the words used in this publication were equivalent to saying, " We believe that H. B. Johnson stole a horse," and that these words are actionable and libelous *per se.* The reasons given for the belief by no means explain away the accusation. In *Hall* v. *Adkins*, 59 Mo. 144, the words were held not actionable because, though the words spoken charged felony, yet they were accompanied with other words explaining the real character of the alleged offense, and showing that no felony had been committed. And this is what is meant by sending the antidote with the poison. But to say that I believe a man to be a thief is to say that he is a thief ; for, when I say that he is a thief, I only express my belief of that fact, and am never taken as expressing more than my moral certainty — not my absolute certainty — of the truth of the accusation. To say that I believe that a man is a thief ; that he disgraces an honorable station ; that he has been accused of larceny, and his accusers acquitted of all wrong in making the charge ;

and that this acquittal was a virtual conviction of the accused, is to say more than simply to say he is a thief.

If I speak the truth in saying that the charge of felony was made, the accusers sued, and discharged, this may be in mitigation of damages ; and, if a publisher of a newspaper, I may perhaps be able to show good reason for making the publication ; but the fact remains that I have stigmatized another as a thief, and I am clearly liable to an action for the words.

2. We are of opinion that a corporation may be held liable in damages for libel. If the contrary were the law, there would be almost perfect immunity for the newspaper press — most of the large newspapers of the world being the property of corporations. But there can be no question whatever, in the present state of the law, that a printing and publishing corporation is liable to an action of damages for libel. Corporations are liable for the tortious acts of their agents, when done within the scope of their employment ; and, like natural persons, may be punished by exemplary damages. *Gillett* v. *Missouri R. R. Co.*, 55 Mo. 315 ; *Malecek* v. *Tower Grove R. R. Co.*, 57 Mo, 17. It was formerly held that a corporation, having no soul, could not do a moral act, and therefore could not be liable in tort ; but that doctrine is entirely obsolete ; and if the case of *Childs* v. *Bank of Missouri*, 17 Mo. 213, decides that a corporation cannot be punished in damages, it has been overruled. We do not think, however, that any such point was necessarily involved in that case. The court held there that a banking corporation cannot be held liable for a malicious prosecution ; but the prosecution of criminals is not clearly within the scope of the powers of a bank. Publishing news is clearly within the scope of the powers of an incorporated publishing company ; and, if it abused its power by publishing injurious falsehood as news, it is liable in a civil action precisely as a private individual.

We think, therefore, that the Circuit Court at special term erred in sustaining the demurrer, and that plaintiff's petition contains facts sufficient to constitute a cause of action.

The judgment of Circuit Court at general term, reversing the judgment of the Circuit Court at special term and remanding the cause, is affirmed. All the judges concur.