CHARLES D. LOTHROP *vs.* CHARLES H. ADAMS & .others.

Essex. Nov. 7, 1879; Nov. 3, 1881. — Oct. 20, 1882. W. ALLEN & C. ALLEN, JJ., absent.

In an action for a libel published in a newspaper, the defendant is not entitled, for the purpose of showing that he had no malicious intention, to prove that there were reports in circulation, similar to those contained in the newspaper, before the publication of the libel, without showing that he knew of such reports.

In an action for libel, in charging the plaintiff with ill-treating his family, there was evidence that the plaintiff had, on a certain occasion, kicked a daughter. The wife of the plaintiff, who testified for him, denied the kicking. On cross-examination, she was asked by the defendant whether her son was present on the occasion, and answered that he was. The defendant then asked her whether the

son had subsequently been asked by the plaintiff what he should say if asked if his father kicked the daughter. The witness answered in the affirmative. *Held*, that the judge, before whom the case was tried, might in his discretion allow the plaintiff to ask the witness what the son said in reply, although the son was present at the trial, and was not called as a witness.

In an action for libel, in charging the plaintiff with cruelly treating one of his children, the defendant put in evidence that the plaintiff had whipped a daughter. The plaintiff then testified that he whipped her because he believed that she had been stealing. *Held*, that the defendant had no ground of exception to the refusal of the judge to allow him to show that the daughter had not in fact been guilty of stealing.

Under the Gen. Sts. *c.* 129, § 77, which provide that, in a civil action for libel, the defendant may upon the trial give in evidence the truth of the matter charged as libellous, " and such evidence shall be deemed a sufficient justification, unless malicious intention shall be proved," if a libel is published in a newspaper owned by copartners, all the partners are responsible for the express malice of one of them.

If a newspaper publishes a statement that, at the trial of A. before an ecclesiastical tribunal, the testimony showed certain facts, which are set forth, and which are libellous in their character, and A. brings an action against the owner of the newspaper for libel, declaring upon the statement so published, and the answer sets up the truth of the statement, the defendant is not entitled to a ruling that he is not called on to show that the plaintiff was not guilty of the matters alleged.

Although a newspaper has the right to publish a fair report of the proceedings before an ecclesiastical tribunal, yet if a report in a newspaper contains defamatory matter, and does not purport to be a full report of the proceedings, and the answer to an action of libel based upon such report does not set up the defence of privilege, the jury cannot treat it as privileged.

In an action for libel, the defendant asked the judge to instruct the jury that, if the charges proved were of such a nature or character that the existence of those not proved, if any, would not affect the plaintiff, he could recover only nominal damages. The judge instructed the jury that, if they should find that some of the charges were true and some not true, they should give the plaintiff only such damages as he had proved that he had sustained solely by reason of those that were not true. *Held*, that the defendant had no ground of exception.

TORT, in seven counts, against the proprietors of a newspaper, called the Springfield Republican, for publishing in said paper, at different times, false and malicious libels of and concerning the plaintiff, a minister, in respect to his treatment of his family. Writ dated October 16, 1876.

The fifth count alleged that, on September 12, 1876, the defendants published in their said paper a false and malicious libel, as follows: " Amherst. Trial of Rev. C. D. Lothrop. Special despatch to the Republican. The trial of Rev. Mr. Lothrop for cruelty to his family was begun before the First Church in secret session last evening, the accused not being present. The

testimony covered the training of the three daughters from their infancy up, and was of the most revolting character, involving brutal horsewhippings for trivial offences, systematic starving, feeding of rotten meat, and positive dishonesty and faithlessness in his family relations."

The answer admitted that the articles set forth in the declaration were published in the Springfield Republican, and that the defendants were, at the times they were published, proprietors of that newspaper; alleged that in publishing said paper they simply presented to the public those matters of general interest, public, political, personal and general news, which as journalists they believed to be in the interest of society and the public good; that in commenting upon the acts or character of any individual they had not been actuated by malice or any malicious motive; that in publishing the acts or misconduct of any public person, or person holding a position like that of the plain-tiff, which of itself would tend to procure him the trust and confidence of the community in which he lived, they were governed entirely by what they considered as their duty in presenting to the public those facts which they fully believed to be true; and they denied that they falsely and maliciously published any articles concerning the plaintiff; and averred that all the articles published by them were substantially true. The answer further set forth, that the plaintiff was tried by his church, and the testimony at such trial fully proved all the various matters set forth in the fifth count; and that the plaintiff was found guilty and expelled from membership in said church.

Trial in this court, at April term 1879, before *Morton*, J., who allowed a bill of exceptions in substance as follows:

The plaintiff rested his case upon the pleadings. The defendants then put in their evidence, and the plaintiff put in evidence in rebuttal.

1. One Henry, of Amherst, where the plaintiff resided at the time of the publication of the alleged libels, testified that he had resided in Amherst a number of years prior to said publications, had been engaged in the provision business there, had known the plaintiff for several years prior to said publication, and had frequently traded with him. The defendants' counsel put the following question to the witness: " State whether

or not there were reports of the brutal treatment of his children by the plaintiff prior to the first publication of such reports in the Springfield Republican." This question was objected to by the plaintiff, and excluded by the judge. It was not contended that this was offered, as evidence of any general reputation, on the question of damages. It appeared in evidence, that one Griffin was the chief local editor of the Springfield Republican in 1876; that Griffin had sent an assistant local editor or reporter to Amherst, before the publication of the alleged libels, to investigate the matters concerning the plaintiff, the result of whose inquiries were published in the Springfield Republican.

2. The testimony of Emma M. Lothrop and of Mary S. Lothrop, children of the plaintiff, tended to show that on the morning of March 31, 1876, which was the eighteenth birthday .of Mary, there was a disturbance in the plaintiff's family; that Mary was whipped on her hand with a slipper by the plaintiff; that the wife of the plaintiff had an ill turn and was sitting on the chamber stairs; that, while there, Mary was by her side for the purpose of ministering to her wants, and that, while there, her father struck her on the side of her head with his hand, and kicked her. Mrs. Lothrop, the wife of the plaintiff, was a witness for the plaintiff, and testified as to what took place on that morning, and, among other things, testified that the plaintiff did not kick Mary. On cross-examination, the defendants' counsel asked her if her son Charles was present at what occurred on that morning, to which she answered in the affirmative. The defendants' counsel then asked her whether, in a subsequent conversation, Charles had been asked by the plaintiff what he should say if he was inquired of as to whether his father kicked Mary that morning, to which she answered in the affirmative. No further questions were asked her upon this subject by the defendants' counsel. Upon reëxamination, the plaintiff's counsel asked her what reply Charles made to the said inquiry. This question the defendants' counsel objected to, but the judge ruled that it was competent, and the witness testified that Charles said his father did not kick Mary. Charles was in court during the trial, and was not called by either party, which fact was commented upon by the respective counsel in their arguments.

3. The plaintiff testified that some years ago he whipped his daughter Anna, in the attic, with a small riding whip, because he believed that she had been guilty of wrongfully taking things that did not belong to her; that she had taken the other children's money to buy oranges with, and then said that they were given to her by one Stearns. The defendants offered to show by Anna that she was not guilty of stealing, and that the oranges were in fact given her by said Stearns. They also offered to show by Stearns that the oranges were in fact given by him to Anna. The judge ruled that it was not competent to show merely that the plaintiff was mistaken as to the facts upon which he acted in inflicting punishment, and that the testimony, offered to show merely that Anna was not guilty of the acts for which she was punished, was collateral and immaterial, and excluded the evidence upon this ground, and also upon the ground that it was not admissible as of right in this stage of the case.

4. The defendants asked the judge to rule, that express malice of one of the defendants could not affect the other defendants, unless it appeared that they participated in such malice; and if the jury should find a verdict on the ground of express malice, they could find it as to those only who were shown to be actuated by such malice. The judge refused so to rule.

5. The defendants asked the judge to rule, "that the defendants are not called upon to show that the plaintiff was guilty of systematic starving, or feeding rotten or unwholesome meat to his children, or that he was guilty of dishonesty and faithlessness in his family relations, the declaration of the plaintiff not setting forth that the defendants made any such charges against him." The judge declined to give this instruction.

6. The defendants asked the judge to instruct the jury, "that the fifth count, being a fair report of the trial before the First Church at Amherst, and so admitted to be by the plaintiff, is not libellous;" but the judge, not understanding that such admission had been made, declined so to instruct the jury, but ruled that, although a public newspaper has the right to publish a fair report of the proceedings before a court or an ecclesiastical tribunal, yet, as this article contains allegations against the plaintiff which are defamatory, as it does not purport to be a full report of the proceedings, and as the defence of privilege is not

set up in the answer, the jury cannot treat it as privileged, and therefore not libellous.

7. The defendants asked the judge to instruct the jury, that, "if the charges proved are of such a nature and character that the existence of those not proved, if any such there are, would not affect the plaintiff, then he is entitled to recover only nominal damages." The judge had previously instructed the jury, that, if they should find that some of the libels are true and some are not true, then their duty would be to give the plaintiff only such damages as he had proved that he had sustained solely by reason of those which were not true; that they must not give him any damages for such charges as were proved to be true, but only such damages, if any, caused by the additional untrue charges. The judge declined to give the instruction in the language requested, deeming that it had been covered by the instructions already given.

The jury rendered a verdict for the plaintiff, in the sum of $1000; and the defendants alleged exceptions.

The case was argued at the bar in November 1879, by *D. Saunders & C. P. Thompson*, (*C. G. Saunders* with them,) for the defendants; and by *S. B. Ives, Jr.*, (*G. B. Ives* with him,) for the plaintiff; and was reargued in November 1881, by *Thompson & C. G. Saunders*, for the defendants; and by *S. B. Ives, Jr.*, for the plaintiff.

FIELD, J. 1. The question "whether or not there were reports of the brutal treatment of his children by the plaintiff prior to the first publication of such reports," which was ruled out by the court, was not put for the purpose of introducing evidence affecting the damages. It is contended, that, as one of the issues in the cause was whether the defendants published the truth with malicious intention, the fact of the existence of such reports would be pertinent on the issue of malicious intention, because malice might be inferred if the reports published were invented by the defendants, and might not, if they published only what was currently reported. But, without absolutely deciding this, and without considering how far the cases, cited by the plaintiff, of *Clark* v. *Munsell*, 6 Met. 373, 389, and *Bodwell* v. *Swan*, 3 Pick. 376, have any application to this question, it is manifest that, to make the existence of these reports competent in this

view, it is necessary that the defendants should have known of their existence before the publication. As reports unknown to the defendants, they have no relevancy to the intention with which the defendants made the publication, and no offer appears in the exceptions to show that the defendants knew of these reports before the publication. The exceptions therefore do not show that the defendants were aggrieved by the ruling.

The exceptions state that it appeared in evidence that one Griffin was the chief local editor of the Springfield Republican in 1876; that Griffin had sent an assistant local editor or reporter to Amherst, before the publication of the alleged libels, to investigate the matters concerning the plaintiff, the results of whose inquiries were published in the Springfield Republican. Apparently, then, the defendants were not prohibited from showing that what they published was the result of inquiries made in Amherst, and, under the circumstances, we are not to presume that the defendants, in offering evidence of reports of brutal treatment, at the same time offered to show that they were known to the defendants before their publication, or called the attention of the presiding justice to the pertinency of the evidence offered, with other evidence to be offered, to show a want of malicious intention.

2. The reply of Charles, when asked what he should say "if he was inquired of as to whether his father kicked Mary," it was within the discretion of the presiding justice to admit.

The practice has been to permit testimony that a material witness is living and within the jurisdiction of the court, and then to permit argument to the jury upon the inferences to be drawn from the fact that he has not been called. In this case the defendants' counsel went further, and asked a witness if the plaintiff had asked Charles what he would say if he were inquired of as to whether he kicked Mary, and the witness answered in the affirmative. The inference to be drawn from this was that the plaintiff knew what Charles would testify, and, as he did not call him, that Charles, if he had testified, would have testified against the plaintiff. To rebut this inference, the reply of Charles was admitted. As evidence of any fact in issue, the whole of this testimony was incompetent, but, as bearing upon the fairness of the conduct of the trial by the plaintiff, we think

it was within the discretion of the presiding justice to admit it. If the fact of the inquiry was admitted, the reply was admissible. *Clark* v. *Fletcher*, 1 Allen, 53.

3. The defendants, among other things in the alleged libel, charged the plaintiff with cruel and abusive treatment of one of his children. The plaintiff rested his case upon the pleadings. The defendants then introduced their evidence, a part of which related to the plaintiff's whipping his daughter Anna. The plaintiff then testified that he whipped Anna because he believed her guilty of stealing. The defendant then offered evidence that Anna was not guilty of stealing. This evidence was rejected by the court, because it was not competent to show merely that the plaintiff was mistaken in the facts upon which he acted, and also upon the ground that it was not admissible as of right at this stage of the case. The ruling was clearly right.

4. In a civil action for a libel, before the passing of any statute on the subject, the truth of the words published was a defence, whether they were published with or without malice; but if the words published were false, it was no defence that the person who published them believed them to be true, unless the communication was privileged. Except, then, in cases of privileged communications, it was generally true that evidence of actual malice or of the want of actual malice was immaterial to the right of action, and was admissible, if admissible at all, only for the purpose of enhancing or diminishing the damages.

The Gen. Sts. c. 129, § 77, provide that, " In every prosecution and in every civil action for writing or for publishing a libel, the defendant may upon the trial give in evidence the truth of the matter contained in the publication charged as libellous; and such evidence shall be deemed a sufficient justification, unless malicious intention shall be proved." This is a reënactment of the St. of 1855, c. 396. For previous statutes, see Rev. Sts. c. 100, § 19; c. 133, § 6; St. 1826, c. 107, § 1. Since the passage of the St. of 1855, c. 396, the truth of the words published is no longer an absolute defence; the plaintiff may, notwithstanding the words are true, maintain his action if he can show that they were published with malicious intention.

The defendants in this case were copartners, engaged in the publication of a newspaper. The court was requested by the

defendants to rule "that express malice of one of the defendants could not affect the other defendants, unless it appeared that they participated in such malice; and if the jury should find a verdict on the ground of express malice, they could find it as to those only who were shown to be actuated by such malice." The court refused to give this ruling. The statute undoubtedly, by using the words " malicious intention," means an actual malicious intention, which the defendants in their request properly enough denominate " express malice." The malice which it has been said the law ordinarily implies, in actions of slander or libel, from the uttering or publishing of false defamatory words, is in one sense a fiction, invented to satisfy the forms of pleading. The words " express malice " have been used, in contradistinction to the malice which it was said the law implies, to mean actual malice, or malice in fact, which is the same thing as malicious intention. The correctness of the ruling asked for must be determined by the rules of law applicable to civil actions, in which a specific actual intention or purpose must be shown to exist in order to maintain the action. But it has been established, on much consideration, as one of the general principles of the law of agency, that the principal is liable civilly in damages for the torts of his agent done for his benefit in the prosecution of his business, and within the scope of the agent's employment, and this rule has been extended to wilful trespasses, fraudulent misrepresentations, malicious prosecutions and libels. The greatest difficulty has been felt in extending this liability to corporations aggregate. *Reed* v. *Home Savings Bank*, 130 Mass. 443, was an action of tort against a savings bank for malicious prosecution. In the opinion Mr. Justice Lord says, " By the great weight of modern authority, a corporation may be liable even when a fraudulent or malicious intent in fact is necessary to be proved, the fraud or malice of its authorized agents being imputable to the corporation; " and many authorities are cited. For additional authorities when the action is for a libel, see *Aldrich* v. *Press Printing Co.* 9 Minn. 133; *Maynard* v. *Fireman's Fund Ins. Co.* 47 Cal. 207; *Johnson* v. *St. Louis Dispatch Co.* 2 Mo. App. 565.

In *Philadelphia, Wilmington & Baltimore Railroad* v. *Quigley*, 21 How. 202, it was held that a corporation may be responsible

for the publication of a libel. The court below had instructed the jury that they might find exemplary damages. This was held erroneous, because "the circumstances under which the evidence was collected, and the publication made, repel the presumption of the existence of malice on the part of the corporation, and so the jury should have been instructed;" but the opinion of the majority of the court does not intimate that, on proper evidence, express malice might not be shown against a corporation.

In *Whitfield* v. *South Eastern Railway*, El., Bl. & El. 115, which was an action of libel against a corporation, Lord Campbell, C. J. says : " But, considering that an action of tort or of trespass will lie against a corporation aggregate, and that an indictment may be preferred against a corporation aggregate both for commission and omission, to be followed up by fine, although not by imprisonment, there may be great difficulty in saying that under certain circumstances express malice may not be imputed to and proved against a corporation."

In *Lawless* v. *Anglo-Egyptian Cotton & Oil Co.* L. R. 4 Q. B. 262, which was an action of libel against a corporation, it was held that the publication was *prima facie* privileged, and that there was no evidence of express malice which ought to have been left to the jury ; but it was not intimated that a corporation aggregate could not be guilty of express malice in the publication of a libel. See *Mackay* v. *Commercial Bank*, L. R. 5 P. C. 394.

In criminal prosecutions for a libel in this Commonwealth, the liability has been restricted to acts in which the defendant participated, or to which he assented. *Commonwealth* v. *Morgan*, 107 Mass. 199, 203. In England at one time the law was thought to be otherwise, but it is now governed by the St. of 6 & 7 Vict. *c.* 96, § 7. *Regina* v. *Holbrook*, 3 Q. B. D. 60, and 4 Q. B. D. 42.

The logical difficulty of imputing the actual malice or fraud of an agent to his principal is perhaps less when the principal is a person than when it is a corporation ; still the foundation of the imputation is not that it is inferred that the principal actually participated in the malice or fraud, but, the act having been done for his benefit by his agent acting within the scope of

his employment in his business, it is just that he should be held responsible for it in damages.

As partners are the general agents of each other and of the firm, within the scope of the business of the partnership, we think a test of the question we are considering is the liability of the proprietor of a newspaper in damages for a libel maliciously published without his knowledge by his agent, whom he has entrusted with the management of the newspaper, and this we regard as well settled. *Shepheard* v. *Whitaker*, L. R. 10 C. P. 502. *Dunn* v. *Hall*, 1 Ind. 344. *Andres* v. *Wells*, 7 Johns. 260. *Perret* v. *New Orleans Times Newspaper*, 25 La. An. 170. *Storey* v. *Wallace*, 60 Ill. 51.

*Smith* v. *Ashley*, 11 Met. 367, rests on its own facts, and decides nothing in reference to the liability of a principal for the malicious acts of his agent, done for his benefit, in the prosecution of his business within the scope of his employment.

Upon this ground of agency, partners have been held liable in civil actions for the fraudulent or malicious conduct of one of them, done without the knowledge of the others, for the benefit of the partnership and within the scope of its business. *Locke* v. *Stearns*, 1 Met. 560. *Gray* v. *Cropper*, 1 Allen, 337. *White* v. *Sawyer*, 16 Gray, 586. *Durant* v. *Rogers*, 87 Ill. 508. *Wolf* v. *Mills*, 56 Ill. 360. *Chester* v. *Dickerson*, 54 N. Y. 1. *Guillou* v. *Peterson*, 89 Penn. St. 163. *Rex* v. *Marsh*, 2 B. & C. 717, 723.

If the liability of the principal for the fraudulent acts of the agent, done within the scope of his employment, be limited to those cases in which the principal derives a benefit from the act of the agent, and a corresponding limitation be put upon the liability of one partner for the fraudulent acts of another, done within the scope of the partnership business, yet when a partnership publishes a newspaper, whatever benefit, if any, is derived from the publication of a libel is necessarily received by the partnership.

The statute requires that an actual malicious intention in making the publication shall be found, if the matter published be true; but we are of the opinion that the Legislature, in enacting this statute, did not intend to change the rules of law whereby one person is made responsible in damages for the wrongs done

by another, but left them to be applied according to the principles which govern the administration of the law; and that the court rightly refused to give the ruling requested.

5. An examination of the pleadings shows that the ruling asked for should not have been given. .

6. The court rightly refused to rule as requested, and the ruling given was correct. It does not appear that it was admitted by the plaintiff that the libel alleged in the fifth count was a fair report of the trial before the Congregational Church. It was not set up in the answer that this was a fair and accurate report of the proceedings before the church, made *bona fide* and without malice. It does not on inspection appear to be such a report.

7. The instruction given was correct, and included the instruction asked for.

In the opinion of a majority of the court the entry must be

*Exceptions overruled.*